UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION


ROBERT ANTHONY PRESTON, JR.,

        Petitioner,

v.                                CASE NO. 6:08-cv-2085-Orl-31GJK

SECRETARY, DEPARTMENT OF
CORRECTIONS, et al.,

        Respondents.

_____/


**ORDER**

    This case is before the Court on the Petition for Habeas Corpus Relief (Doc. No. 1)

filed by Robert Anthony Preston, Jr. Pursuant to the instructions of the Court, Respondents

filed a Response (Doc. No. 13) and a Supplemental Response (Doc. No. 22) to the Petition

for Writ of Habeas Corpus. Thereafter, Petitioner filed a Reply (Doc. No. 20) and

Supplemental Reply (Doc. No. 23) to the responses. As discussed hereinafter, the habeas

petition is denied.

**I.    STATEMENT OF THE FACTS**

    The facts adduced at trial, as set forth by the Florida Supreme Court, are as follows:

        Earline Walker, who was working as a night clerk at the Li'l Champ
    convenience store in Forest City, was noticed missing at approximately 3:30
    a.m. on the morning of January 9, 1978. All bills had been removed from the
    cash register and the safe, and it was subsequently determined that $574.41
    had been taken. Walker's automobile was found later that day parked on the

wrong side of the road approximately one and a half miles from the Li'l Champ store. Thereafter, at about 1:45 p.m. of the same day, Walker's nude and mutilated body was discovered in an open field adjacent to her abandoned automobile.

Preston lived with his brothers, Scott and Todd, at his mother's home which was located about one-quarter of a mile from the field in which Walker's body was found. Scott Preston testified that he spent the evening of January 8, 1978, at the house with his brothers and his girlfriend, Donna Maxwell. At about 11:30 p.m., he retired to the bedroom with Donna. About an hour later, Robert knocked on the door, asking Scott to go with him to the Parliament House "to get some money." When Scott declined, Robert asked one of them to help him inject some PCP. After Scott and Donna refused to do so, they heard the door slam as Robert left the house. At about 4:30 a.m., Robert returned and asked them to come to the living room where he was attempting to count some money. Because he "wasn't acting normal," they counted the money for him, which came to $325. Robert told them that he and a friend, Crazy Kenny, had gone to a gay bar called the Parliament House where they had hit two people on the head and taken their money. Scott and Donna went back to bed. Donna gave similar testimony concerning Robert's actions. She also said that shortly before 9:00 a.m., Robert returned and told her that he had heard that a body of a woman who worked in a store near their house had been discovered in a field.

The head security guard at the Parliament House testified that he observed no disturbance nor was any disturbance reported to him at that establishment during his shift which began in the early evening on January 8 and ended at 5:00 a.m. on January 9. There was no police report of any incident at the Parliament House on January 9, 1978.

A woman returning home from her late night job at about 2:20 a.m. saw Preston wearing a plaid CPO jacket at a location near the vacant lot where Walker's body was found.

Preston was arrested the day following the murder on an unrelated charge. As part of the booking process, his personal effects, including his belt, were removed, and his fingerprints were taken. A pubic hair was discovered entangled in Robert's belt buckle. A microscopic analysis of the hair together with another one discovered on his jacket indicated that they could have originated from Walker's body.

Blood samples were taken from the victim and from Preston and compared with two blood stains found on Preston's CPO jacket. The blood samples were compared as to eight separate factors, including type, Rh factor, and enzyme content. The sample from the coat and the victim matched in all eight tests, while Preston's blood did not match in three. An expert opined that the blood on the coat could not have been Preston's but could have been the victim's. He also testified that only one percent of the population would have all eight factors in their blood.

Several detached food stamps were also found in Preston's bedroom pursuant to a consent search authorized by his mother. As a result of a fracture pattern analysis, an expert witness testified that these coupons had been torn from a booklet used by Virginia Vaughn to make purchases at the Li'l Champ food store several days before the murder. Vaughn testified that at the time of her purchase the coupons had been placed either in the cash register or the safe.

Five usable latent fingerprints and palm impressions were obtained from Walker's automobile and were identified as having been made by Preston. One of these was from a cellophane wrapper of a Marlboro cigarette pack found on the front console. The other prints were located on the doorpost and the roof of the car.

Preston took the stand in his own behalf. He agreed that he was at his mother's house in the company of his brothers and Donna Maxwell the night of January 8. However, he said he had injected PCP and had no recollection of what occurred during the middle portion of the night. He did recall trying to count some money and had some recollection of going to the Parliament House in a car driven by Crazy Kenny. Preston denied having touched Walker's abandoned automobile. He also said that he had not been in the vicinity of the Li'l Champ store for approximately six months before the murder. He testified that the food stamps discovered in his room were found by him on a path behind the Li'l Champ store on the morning of the murder when he went there to purchase cigarettes. He admitted talking to Donna Maxwell regarding the discovery of the store clerk's body but said that the conversation did not occur until about 3:30 to 4:30 p.m.

*Preston v. State,* 531 So. 2d 154, 155-57 (Fla. 1988).

## II.    Procedural History

Petitioner was charged by indictment with four counts of first degree murder (counts one through four),[1] one count of robbery (count five), one count of kidnaping (count six), and one count sexual battery (count seven) (Ex. A-12 at 2188-90.)[2] A jury trial was held, and Petitioner was found guilty of counts one, two, three, five and six. (Ex A-15 at 2696-2700.) A judgment of acquittal was entered as to counts four and seven. The trial court entered a judgment as to the robbery and kidnaping counts, *see id*. at 2802, and sentenced Petitioner to imprisonment for a term of fifteen years as to the robbery count and to life imprisonment as to the kidnaping count, with the sentences to run consecutively. *Id*. at 2802-08.

Following the penalty phase, the jury recommended death by a vote of seven to five. *Id*. at 2733. The trial court sentenced Petitioner to death as to the first degree murder counts.[3] (Ex A-16 at 2813-19.)

---

[1]Count one was first degree murder, count two was first degree murder during the commission of a robbery, count three was first degree murder during the commission of a kidnaping, and count four was first degree murder during the commission of a sexual battery.

[2]References to the record will be made by citing to the particular volume and page of the advanced appendix. For example, "Ex. A at 1" refers to page one of the volume labeled Exhibit A.

[3]The trial court found four aggravating circumstances: 1) Petitioner was previously convicted of another capital felony or of a felony involving the use or the threat of violence to the person; 2) the felony was committed immediately after Petitioner had committed the crime of robbery and while he was engaged in the commission of a felony; 3) the murder was especially heinous, atrocious, or cruel; and 4) the murder was committed in a cold, calculated, and premeditated manner without any pretense of moral or legal justification. The trial court found no mitigating factors.

On direct appeal, Petitioner raised five claims. (Ex. B.) The Supreme Court of Florida affirmed the convictions and sentences. *Preston v. State*, 444 So. 2d 939 (Fla. 1984).

On October 31, 1985, Petitioner filed a motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850, which was later supplemented, raising fourteen claims. (Ex. F-6 at 954-88, F-7 at 1263-88.) The trial court held an evidentiary hearing and then entered an order denying all of Petitioner's claims. (Ex. F-7 at 1307-13.) Petitioner appealed the denial, raising thirteen claims. (Ex. G.) The Florida Supreme Court affirmed the denial of the motion for postconviction relief. *Preston v. State*, 528 So. 2d 896 (Fla. 1988). The Florida Supreme Court indicated, however, that certain matters pertaining to newly discovered evidence could be presented through the filing of a motion for writ of error coram nobis. *Id.* at 898.

Following the issuance of a new death warrant, Petitioner filed in the Florida Supreme Court an application for leave to file a petition for writ of error coram nobis and a request for stay of execution. (Ex. L.) The petition for writ of error coram nobis centered around alleged newly discovered evidence. Petitioner also filed a petition for writ of habeas corpus with the Florida Supreme Court, raising seven claims. (Ex. M.) The Florida Supreme Court entered an opinion denying the petition for writ of error coram nobis and the petition for a writ of habeas corpus. *See Preston v. State*, 531 So. 2d 154 (Fla. 1988).

Petitioner next filed in the Florida Supreme Court another petition for writ of habeas corpus, which was denied without prejudice on April 20, 1989, to raise the same arguments via a Rule 3.850 motion.

On April 2, 1990, Petitioner filed a second Rule 3.850 motion, raising nine claims. *See* Ex. P at 53-147.[4]  The trial court denied the motion, *see id*. at 47-52, and the Florida Supreme Court entered an opinion vacating Petitioner's sentence of death and remanding the case for resentencing.  *See Preston v. State*, 564 So. 2d 120 (Fla. 1990).  The supreme court found that the vacation of Petitioner's prior violent felony conviction required that the case be remanded for resentencing since it could not be said that the vacation of the prior violent felony conviction constituted harmless error as related to his death sentence.

In January 1991, a new penalty phase jury sentencing was held.  The jury recommended death by a vote of nine to three, but, subsequently, the trial court granted a motion for a new penalty phase trial.  (Ex. Q-10 at 1801, 1841-44.)  In April 1991, another penalty phase jury was impaneled and evidence was presented.  The jury unanimously recommended a sentence of death.  (Ex. Q-6 at 1130.)  The trial court then sentenced Petitioner to death.  (Ex. Q-9 at 1674-78; Ex. Q-10 at 1914-25.)[5]

---

[4]The Court notes that, on February 5, 1987, the Florida Supreme Court entered an opinion adopting a new rule of criminal procedure to address specifically postconviction and collateral relief sought by prisoners for whom death warrants have been signed.  *See In re Florida Rules of Criminal Procedure, Rule 3.851*, 503 So. 2d 320 (Fla. 1987).  As a result, Florida Rule of Criminal Procedure 3.851 was created.  However, Petitioner identified all of his motions for postconviction relief as being brought under Rule 3.850.  For ease of reference, the Court will identify all of Petitioner's motions for postconviction relief as being brought under Rule 3.850.

[5]The trial court found four aggravating circumstances: 1) the murder was committed while Preston was engaged in a kidnaping; 2) the murder was especially heinous, atrocious, or cruel; 3) the murder was committed for the purpose of avoiding arrest; and 4) the murder was committed for pecuniary gain.  The trial court found one statutory mitigating factor (Petitioner's age) and five nonstatutory mitigating factors; however, it afforded the mitigation only minimal weight.

Petitioner filed an appeal with the Supreme Court of Florida, raising eight claims. (Ex. R.) The Florida Supreme Court entered an opinion affirming the sentence of death. *Preston v. State*, 607 So. 2d 404 (Fla. 1992).

On May 24, 1994, Petitioner filed a third Rule 3.850 motion, which was later amended. *See* Ex. WW-1, WW-2, WW-7, WW-10. Petitioner raised a total of forty-two claims. The trial court held an evidentiary hearing as to claims 1, 4, 6, 17, 18, 23, 27, 28, 29, 30, 31, 32, 33, 35, 36, and 39. *See* Ex. WW-8 at 1380-81. The trial court then entered an order denying each of Petitioner's claims. (Ex. WW-13 at 2124-34.)

Petitioner appealed the denial, raising eight claims. (Ex. X.) He also filed a second petition for writ of habeas corpus, raising four claims. (Ex. Y.) The Florida Supreme Court entered an opinion affirming the trial court's denial of Petitioner's Rule 3.850 motion and denying the petition for a writ of habeas corpus. *Preston v. State*, 970 So. 2d 789 (Fla. 2007).

## III.    GOVERNING LEGAL PRINCIPLES

Because Petitioner filed his petition after April 24, 1996, this case is governed by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *Penry v. Johnson*, 532 U.S. 782, 792 (2001); *Henderson v. Campbell*, 353 F.3d 880, 889-90 (11th Cir. 2003). The AEDPA "establishes a more deferential standard of review of state habeas judgments," *Fugate v. Head*, 261 F.3d 1206, 1215 (11th Cir. 2001), in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002); *see also Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (recognizing that the federal habeas court's evaluation of

state-court rulings is highly deferential and that state-court decisions must be given the benefit of the doubt).

## A.    Standard of Review Under the AEDPA

Pursuant to the AEDPA, habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

(1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  The phrase "clearly established Federal law," encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision."  *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *see also Schwab v. Crosby*, 451 F.3d 1308, 1324 (11th Cir. 2006) (stating that the federal law relevant to this analysis is the United States Supreme Court precedent "in existence at the time the conviction became final").

"[S]ection 2254(d)(1) provides two separate bases for reviewing state court decisions; the 'contrary to' and 'unreasonable application' clauses articulate independent considerations a federal court must consider."  *Maharaj v. Secretary for Dep't. of Corr.*, 432 F.3d 1292, 1308 (11th Cir. 2005).  The meaning of the clauses was discussed by the Eleventh Circuit Court of Appeals in *Parker v. Head*, 244 F.3d 831, 835 (11th Cir. 2001):

Under the "contrary to" clause, a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the United States Supreme Court] on a question of law or if the state court decides a case

differently than [the United States Supreme Court] has on a set of materially indistinguishable facts. Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the United States Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.

If the federal court concludes that the state court applied federal law incorrectly, habeas relief is appropriate only if that application was "objectively unreasonable." *Id*.

Finally, under § 2254(d)(2), a federal court may grant a writ of habeas corpus if the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." A determination of a factual issue made by a state court, however, shall be presumed correct, and the habeas petitioner shall have the burden of rebutting the presumption of correctness by clear and convincing evidence. *See Parker*, 244 F.3d at 835-36; 28 U.S.C. § 2254(e)(1).

**B.      Standard for Ineffective Assistance of Counsel**

The United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984), established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance: (1) whether counsel's performance was deficient and "fell below an objective standard of reasonableness"; and (2) whether the deficient performance prejudiced the defense.[6] *Id*. at 687-88. A court must adhere to a strong presumption that counsel's conduct falls within the wide range of

---

[6]In *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993), the United States Supreme Court clarified that the prejudice prong of the test does not focus solely on mere outcome determination; rather, to establish prejudice, a criminal defendant must show that counsel's deficient representation rendered the result of the trial fundamentally unfair or unreliable.

reasonable professional assistance. *Id.* at 689-90. "Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* at 690; *Gates v. Zant*, 863 F.2d 1492, 1497 (11th Cir. 1989).

As observed by the Eleventh Circuit Court of Appeals, the test for ineffective assistance of counsel:

> has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial. Courts also should at the start presume effectiveness and should always avoid second guessing with the benefit of hindsight. *Strickland* encourages reviewing courts to allow lawyers broad discretion to represent their clients by pursuing their own strategy. We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992) (citation omitted). Under those rules and presumptions, "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994).

Additionally, it is well established that a defendant has the right to effective counsel on appeal. *Alvord v. Wainwright*, 725 F.2d 1282, 1291 (11th Cir. 1984). The Eleventh Circuit Court of Appeals has applied the United States Supreme Court's test for ineffective assistance at trial to guide its analysis of ineffective assistance of appellate counsel claims. *Heath v. Jones*, 941 F.2d 1126, 1130 (11th Cir. 1991); *Matire v. Wainwright*, 811 F.2d 1430, 1435 (11th Cir. 1987). Thus, in order to establish ineffective assistance of appellate counsel,

Petitioner must show (1) that counsel's performance was deficient and "fell below an objective standard of reasonableness" and (2) that the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687-88.

## C.    Exhaustion and Procedural Default

One procedural requirement set forth in the AEDPA precludes federal courts, absent exceptional circumstances, from granting habeas relief unless the petitioner has exhausted all means of available relief under state law. 28 U.S.C. § 2254(b); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842-22 (1999); *Picard v. Connor*, 404 U.S. 270, 275 (1971). Specifically, the AEDPA provides, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–
>
> (A)    the applicant has exhausted the remedies available in the courts of the State; or
>
> (B)    (i)    there is an absence of available State corrective process; or
>
>        (ii)    circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1).

Thus, a federal court must dismiss those claims or portions of claims that have been denied on adequate and independent procedural grounds under state law. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). In addition, a federal habeas court is precluded from considering claims that are not exhausted but would clearly be barred if returned to state

court. *Id*. at 735 n.1 (stating that if the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred, there is a procedural default for federal habeas purposes regardless of the decision of the last state court to which the petitioner actually presented his claims.

Procedural default will be excused only in two narrow circumstances. First, a petitioner may obtain federal review of a procedurally defaulted claim if he can show both "cause" for the default and actual "prejudice" resulting from the default. "To establish 'cause' for procedural default, a petitioner must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in the state court." *Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir. 1999). To establish "prejudice," a petitioner must show that there is at least a reasonable probability that the result of the proceeding would have been different. *Henderson*, 353 F.3d at 892 (citations omitted).

The second exception, known as the "fundamental miscarriage of justice," only occurs in an extraordinary case, in which a "constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496 (1986). Actual innocence means factual innocence, not legal insufficiency. *Bousley v. United States*, 523 U.S. 614, 623 (1998). To meet this standard, a petitioner must "show that it is more likely than not that no reasonable juror would have convicted him" of the underlying offense. *Schlup v. Delo*, 513 U.S. 298, 327 (1995). In addition, "'[t]o be credible,' a claim of actual innocence must be based on [new] reliable evidence not presented at trial." *Calderon*

*v. Thompson*, 523 U.S. 538, 559 (1998) (quoting *Schlup*, 513 U.S. at 324).

## IV.    MERITS OF THE PETITION

### A.    Claim One

Petitioner alleges that he is entitled to habeas relief based on newly discovered evidence, alone and in combination with other evidence of actual innocence. Petitioner states that DNA tests showed that the belt buckle hair was not the hair of the victim. This claim was raised in Petitioner's third Rule 3.850 motion (claim 39) and was denied because the belt buckle hair was not the only item in the case that tied Petitioner to the victim. The Supreme Court of Florida affirmed because the DNA evidence was not such that it would have probably produced an acquittal on retrial. *Preston v. State*, 970 So. 2d 789, 799 (Fla. 2007). The supreme court noted that fingerprints in and on the victim's car, the blood, and the food stamps all linked Petitioner to the victim and were the most persuasive pieces of circumstantial evidence. *Id.* at 800.

At trial, Martin LaBrusciano, a Lieutenant and Supervisor of the Technical Services Division of the Seminole County Sheriff's Department, testified that, while inspecting Petitioner's personal effects from the jail, he recovered a brown pubic hair entangled in a belt buckle. (Ex. A-6 at 1151.) Microscopic analysis of that hair by the Florida Department of Law Enforcement revealed that it could have originated from the victim. *Id.* at 1105-06. However, DNA tests conducted in 2002 revealed that the belt buckle hair was not the hair

of the victim.  (Ex. WW-11 at 1835.)

Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding. *Herrera v. Collins*, 506 U.S. 390, 400 (1993); *see also, Brownlee v. Haley*, 306 F.3d 1043, 1065 (11th Cir. 2002) ("It is not our role to make an independent determination of a petitioner's guilt or innocence based on evidence that has emerged since the trial.").  Federal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution, not to correct errors of fact. *See Herrera*, 506 U.S. at 400.  A claim of innocence is not itself a constitutional claim; instead, it is a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits.  *Schlup v Delo*, 513 U.S. 298, 315 (1995).  To the extent Petitioner promotes a freestanding claim of actual innocence, he cannot show that the state decision was contrary to *Herrera*.

Moreover, assuming that Petitioner's actual innocence claim is cognizable, the claim fails because Petitioner cannot meet the "extraordinarily high" standard as defined by the United States Supreme Court.  *Herrera*, 506 U.S. at 426. A petitioner must show new facts unquestionably establishing his innocence.  *Schlup*, 513 U.S. at 317.  In particular, the petitioner must show that "it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence."  *Id*. at 327.

As stated by the Florida Supreme Court,

Contrary to Preston's argument, the pubic hair was not the only link between

14

Preston and the victim. The fingerprints in and on Walker's car, the blood, and the food stamps all link Preston to the victim. Moreover, as we noted in *Preston III*, the fingerprints, blood, and food stamps are the most persuasive pieces of circumstantial evidence.

*Preston*, 970 So. 2d at 800.

Specifically, the record shows that Petitioner's fingerprints (including a thumbprint) and palm impressions were found on the wrapper of a cigarette pack found in the victim's car and on the doorpost and the roof of the victim's car. (Ex. A-6 at 1159-89.)

Additionally, blood samples were taken from the victim and from Petitioner and were compared with blood stains located on a jacket belonging to Petitioner.[7] The blood samples were compared as to eight separate factors, including type, Rh factor, and enzyme content. *Id*. at 1066-72. The sample from the coat and the victim matched in all eight tests. An expert concluded that the jacket stains were human blood, that the blood could not have been Petitioner's, and that the blood could have been the victim's. *Id*. at 1165, 1172-73. The expert also stated that only one percent of the population would have all eight factors in their blood.

Further, several detached food stamps were found in Petitioner's bedroom. *Id*. at 1021-23. A fracture pattern analysis revealed that the food stamps had been torn from a booklet used by Virginia Vaughn to make purchases, several days before the murder, at the convenience store where she and the victim worked. *Id*. at 1048-1056.[8] Comparison of

---

[7]The jacket was found in Petitioner's bedroom the day after his arrest.

[8]Ms. Vaughn was an employee at the same convenience store. (Ex. A-4 at 694.)

the serial numbers of the food stamps recovered from Petitioner's bedroom with those of two coupon booklets turned over to the police by Ms. Vaughn showed four matching food stamps. *Id*. at 1030. After using the food stamps, Ms. Vaughn immediately placed them in the store's cash register or safe. (Ex. A-4 at 696-701.)

Thus, as correctly discussed by the Florida Supreme Court, there was other evidence that linked Petitioner to the victim. The blood, the fingerprints and palm impressions, and the food stamps all linked Petitioner to the victim. Hence, there was other strong evidence of guilt, and, based on the other evidence admitted at trial, the absence of the pubic hair evidence could not reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict. Petitioner has not shown that the absence of the pubic hair evidence would have produced an acquittal on retrial. Thus, Petitioner has failed to show that the Florida Supreme Court's denial of this claim was contrary to or an unreasonable application of clearly established federal law. Claim one will, therefore, be denied.

## B.    Claim Two

Petitioner states that he is entitled to relief based on "newly discovered evidence that [his] brother confessed to the offenses, alone and in combination with the other evidence of actual innocence and prosecutorial misconduct . . . ."[9] After the evidentiary hearing on

---

[9]Petitioner also discusses an alleged *Brady* violation with regard to the State's alleged failure to disclose evidence relating to keys bearing the name "Marcus Morales" that were found in the ash tray of the victim's car on the morning of the murder. This issue will be discussed with regard to claim ten.

Petitioner's first Rule 3.850 motion, Petitioner filed a supplemental pleading setting forth allegedly newly discovered evidence in the form of sworn affidavits. (Ex. F-7 at 1263-88.) The supplemental pleading alleged that Petitioner was innocent, and Petitioner attached four separate affidavits in support of the supplemental pleading.[10]  Petitioner asserts that the evidence "raises substantial question concerning" his guilt.  The trial court denied the first Rule 3.850 motion but did not address the newly discovered evidence argument.  The Florida Supreme Court addressed Petitioner's attempt to raise issues concerning the newly discovered evidence:

> In this appeal, appellant raises a myriad of issues, some of which are predicated upon the motions which were filed after the evidentiary hearing and which sought to inject new issues into the case. Under the circumstances, the judge properly declined to rule on these issues, and they will not be further addressed in this opinion. To the extent, if any, that the content of such motions reflects newly discovered evidence tending to exonerate appellant, this may be presented through the filing of a motion for writ of error coram nobis. We note, however, that at least two of the affidavits upon

---

[10]Petitioner submitted the affidavits of Steven Hagman, John Yazell, James MacGeen, and Glenn Yazell.  Mr. Hagman stated that, while he and Scott Preston were inmates at the Lake Butler Correctional Facility in 1980, Scott Preston told him that he had murdered the "Walker woman" and described specific details as to how he did it.  Mr. Hagman indicated that he wrote the Seminole County State Attorney concerning Scott Preston's statement and was later interviewed by an assistant state attorney concerning this matter.

John Yazell stated the he had lived in the same neighborhood as the Prestons and that he was also incarcerated with Scott Preston at Lake Butler in 1980.  He stated that Scott Preston told him the details of how he had killed the "Walker woman."  Mr. MacGeen, stated he had lived in the same neighborhood as the Prestons and that Scott Preston told him, after Petitioner's arrest, that he (Scott Preston) was involved in the murder.  Glenn Yazell, the brother of John Yazell, stated that he believed Scott Preston was guilty of the murder because he had confessed to his brother, John.  Both MacGeen and Glenn Yazell testified for Preston at the hearing on the motion for postconviction relief, but they were not questioned about the matters contained in their affidavits.

> which appellant relies were given by persons who had already testified at the
> evidentiary hearing.

*Preston*, 528 So. 2d at 898. Petitioner then raised the claim in his petition for writ of error

coram nobis. The Florida Supreme Court found that it could not be said that the newly

discovered evidence would have conclusively prevented entry of the judgment, and the

existence of the newly discovered evidence would not have probably caused the jury to

find Petitioner innocent. *Preston*, 531 So. 2d at 158.

As discussed with regard to claim one, claims of actual innocence based on newly

discovered evidence have never been held to state a ground for federal habeas relief absent

an independent constitutional violation occurring in the underlying state criminal

proceeding. *Herrera*, 506 U.S. at 400. Federal habeas courts sit to ensure that individuals

are not imprisoned in violation of the Constitution, not to correct errors of fact. *See id*. A

claim of innocence is not itself a constitutional claim; instead, it is a gateway through which

a habeas petitioner must pass to have his otherwise barred constitutional claim considered

on the merits. *Schlup*, 513 U.S. at 315. To the extent Petitioner promotes a freestanding

claim of actual innocence, he cannot show that the state decision was contrary to *Herrera*.

Moreover, assuming Petitioner's actual innocence claim is cognizable, the claim fails

because Petitioner cannot meet the "extraordinarily high" standard as defined by the

United States Supreme Court. *Herrera*, 506 U.S. at 426. A petitioner must show new facts

unquestionably establishing his innocence. *Schlup*, 513 U.S. at 317. In particular, the

petitioner must show that "it is more likely than not that no reasonable juror would have

convicted him in the light of the new evidence." *Id*. at 327.

Here, the Florida Supreme Court correctly found that there was substantial circumstantial evidence supporting the first-degree murder conviction, which included evidence regarding the fingerprints, the blood, and the food stamps. Hence, there was other strong evidence of guilt, and, based on the other evidence admitted at trial, the introduction of the evidence set forth in the affidavits could not reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict. Petitioner has not shown that, were he able to use the evidence set forth in the affidavits, it would probably have produced an acquittal on retrial.

Further, the testimony of Scott Preston and Donna Maxwell contradicts Petitioner's version of the events. At best, the evidence in the affidavits would have put in question the credibility of Scott Preston; however, it would not have invalidated his testimony. Moreover, it would not have affected Donna Maxwell's testimony, who fully corroborated Scott Preston's testimony. Thus, Petitioner has failed to show that the Florida Supreme Court's denial of this claim was contrary to or an unreasonable application of clearly established federal law. Claim two will, therefore, be denied.[11]

## C.    Claim Three

Petitioner states that the state court erred in denying his motion to suppress his jacket and food stamps found in his bedroom after his mother, Virginia Preston, gave

---

[11]To the extent that Petitioner has raised a *Brady* claim with regard to evidence stated in the affidavits, the Court finds that Petitioner has not met his burden of demonstrating a *Brady* violation.

consent to the search.  Prior to trial, Petitioner filed a motion to suppress these items on the basis that no search warrant had been obtained and that Ms. Preston lacked authority to grant a search of his room because she did not exercise sufficient joint control and dominion over it.  (Ex. A-13 at 2280.)  The trial court held a hearing on the motion, ruled in favor of Petitioner, and suppressed the jacket and food stamps.  *Id.* at 2316.  The State then pursued an interlocutory appeal with the state appellate court, which transferred the case to the Florida Supreme Court.  The Florida Supreme Court, in turn, transferred the case back to the state appellate court.  *See State v. Preston*, 376 So. 2d 3 (Fla. 1979).  The state appellate court then entered an opinion reversing the trial court's order because Ms. Preston did have equal access to the areas where these particular articles were found.  *State v. Preston*, 387 So. 2d 495 (Fla. 1980).  As a result, these items were received in evidence at Petitioner's trial.

According to Petitioner, his mother did not have sufficient authority to consent to a search of his room, and even if she did, her consent was not voluntary in this instance because it "was the product of mere acquiescence or submission to authority."  This claim was raised on direct appeal and was denied because Petitioner had no reasonable expectation of privacy in those items, Ms. Preston's consent was voluntary, and Ms. Preston's consent was not conditioned on her being present during the search.  *Preston*, 444 So. 2d at 943.

The Supreme Court in *Stone v. Powell*, 428 U.S. 465 (1976), determined that "when the State has provided an opportunity for full and fair litigation of a Fourth Amendment

claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Id.* at 494 (footnotes omitted). In order to be entitled to federal habeas review of a Fourth Amendment claim, the petitioner must demonstrate that he "was denied an opportunity for a full and fair litigation of that claim at trial and on direct review." *Id.* at 495 n.37. Federal courts will not consider the merits of Fourth Amendment cases merely because the state courts erred in their Fourth Amendment analysis. *See Swicegood v. State of Alabama*, 577 F.2d 1322, 1324 (5th Cir. 1978).

Petitioner was provided the opportunity for a full and fair hearing on his motion to suppress before the trial court as well as the full and fair litigation of the exclusion and suppression issues on appellate review. Additionally, Petitioner does not allege he was not provided a full and fair litigation of this claim in either the trial court or appellate court. As such, he has failed to present cognizable claims on federal habeas review as to claim three,[12] and it is denied.

In addition, the record established that Ms. Preston owned the house where

---

[12]In the present case, Petitioner has not specifically identified the federal constitutional right allegedly violated with regard to this claim. The Court has presumed that he has alleged a violation of Fourth Amendment right. However, on direct appeal, he made no reference or argument as to the violation of his federal constitutional rights, and it appears that he is procedurally barred from doing so here. *See Anderson v. Groose*, 106 F.3d 242, 245 (8th Cir. 1997) (to avoid defaulting on a claim, a petitioner seeking habeas review must present to the federal court the same factual arguments and legal theories that were presented to the state court). Thus, this claim is also denied on the basis that a) he has failed to allege the violation of a federal constitutional right, and b) to the extent he has done so, it is procedurally barred because it was not exhausted with the state courts.

Petitioner resided; that she paid the bills; and that she had access to Petitioner's room for purposes of a) retrieving his laundry for cleaning (and thereafter returning the laundry to his room) and b) cleaning the room itself. (Ex. A-14 at 2434-43.) Clearly, she had sufficient joint occupancy and control of Petitioner's bedroom for purposes of giving consent to search the bedroom. Her consent to the search was voluntary, and Petitioner has failed to demonstrate that the denial of his motion to suppress was erroneous. As such, the state court's rejection of this claim was not contrary to, nor did it involve an unreasonable application of, clearly established Supreme Court precedent, nor was it based upon an unreasonable determination of the facts in light of the evidence presented.

**D.  Claim Four**

Petitioner states that the trial court erred in denying his motions for judgment of acquittal on count one because there was insufficient evidence of premeditation. This claim was raised in his direct appeal (claim two), and it was denied because there was substantial evidence from which premeditation could have been inferred by the jury. *Preston v. State*, 444 So. 2d 939, 944 (Fla. 1984).

To the extent Petitioner relies on his state law arguments of whether, under Florida law, the State's proof sufficed to withstand a motion for judgment of acquittal in a prosecution such as Petitioner's, the Court finds that this issue is a matter of state law for which federal habeas corpus relief does not lie. Section 2254 explicitly requires a federal court to entertain an application for writ of habeas corpus only on the ground that the petitioner is "in custody in violation of the Constitution or laws or treaties of the United

States." Even when a petition that actually involves state law issues is "couched in terms of equal protection and due process," this limitation on federal habeas corpus review is of equal force. *Willeford v. Estelle*, 538 F.2d 1194, 1196-98 (5th Cir.1976). Here, Petitioner has not presented this claim in the context of a federal constitutional violation, and, therefore, it is denied.

The Court notes that this claim would fail even if it had been properly asserted under section 2254. Under Florida law, a motion for judgment of acquittal challenges the legal sufficiency of the evidence. *State v. Odom*, 862 So. 2d 56, 59 (Fla. 2d DCA 2003). A judgment of acquittal should be granted when the State fails to present legally sufficient evidence to establish each element of the crime charged. *Id*. On federal habeas review, the question for the Court concerning the sufficiency of evidence in a state court proceeding is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). For a judgment of acquittal to be properly denied, it is not necessary that all facts favor the prosecution. *See Cosby v. Jones*, 682 F.2d 1373, 1383 n. 21 (11th Cir.1982) (finding that "[t]he simple fact that the evidence gives some support to the defendant does not demand acquittal.").

Under Florida law,

Premeditation, like other factual circumstances, may be established by circumstantial evidence. Evidence from which premeditation may be inferred includes such matters as the nature of the weapon used, the presence or

absence of adequate provocation, previous difficulties between the parties, the manner in which the homicide was committed, and the nature and manner of the wounds inflicted.

*Spinkellink v. State*, 313 So. 2d 666, 670 (Fla. 1975) (citation omitted) (quotation omitted).

"Premeditation has been defined as a fully formed conscious purpose to kill existing in the mind of the perpetrator for a sufficient length of time to permit of reflection, and in pursuance of which the act of killing ensues." *Weaver v. State*, 220 So. 2d 53, 59 (Fla. 2d DCA 1969).

In the present case, the record amply supported the trial court's denial of Petitioner's motion for a judgment of acquittal. Dr. Gumersindo Garay, the medical examiner, testified that the victim sustained multiple stab wounds, and the nature of the injuries she suffered were particularly brutal. (Ex. A-5 at 854, 860, 886.) There was almost a complete severance of her neck, trachea, carotid arteries, and jugular veins. *Id*. at 863. The medical examiner stated that the murder weapon was probably a knife of four to five inches in length. *Id*. at 891. The deliberate use of this type of weapon so as to nearly decapitate the victim supported a finding of premeditation.

In addition, there was testimony that, at approximately 12:30 a.m. on the morning of the murder, Petitioner attempted to get Scott Preston to go out with him because he (Petitioner) "knew a way to get some money." (Ex. A-4 at 775, Ex. A-5 at 803.) Scott Preston refused to go with Petitioner, and Petitioner then left the home. *Id*. Petitioner returned to the home at about 4:30 a.m. in an excited state and exclaimed, "All right. I did it." *See* Ex. A-4 at 775, Ex. A-5 at 805-06. Petitioner then asked Scott Preston to come out

into the living room. Ex. A-4 at 777. Scott Preston and Donna Maxwell went out to the living room and observed Petitioner counting money on the floor. *Id*. at 778. Petitioner was having trouble counting the money, and Scott Preston and Ms. Maxwell counted approximately three hundred dollars. *Id*. While the money was being counted, Petitioner explained that the money came from he and a friend robbing "two gay people." *Id*. at 779.

In light of the evidence presented at trial, the Court concludes that the evidence, when viewed in a light most favorable to the State and after resolving all conflicts in favor of the prosecution, mandates the denial of Petitioner's claim. *See Machin v. Wainwright,* 758 F.2d 1431, 1435 (11th Cir. 1991) (the federal habeas court must presume that conflicting inferences to be drawn from the evidence were resolved by the trier of fact in favor of the prosecution). Petitioner's statement to his brother on the morning of the murder that he knew how to get some money, Petitioner's excited statement that "I did it," and the brutal nature of the killing was sufficient to allow the question of premeditation to go the jury. As a result, claim four must be denied.[13]

## E.    Claim Five

Petitioner claims that the trial court erred by failing to give requested jury instructions on the defense of insanity. This claim was raised on direct appeal (claim

[13]Further, relief must be denied based on section 2254(d). The claim was adjudicated on the merits by the Florida Supreme Court, and Petitioner has failed to demonstrate that the adjudication of the claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States. Finally, Petitioner has not shown that the adjudication of the claim resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

three), and it was denied because Petitioner had not met his burden of showing that he was insane. *Preston v. State*, 444 So. 2d 939, 944 (Fla. 1984).

Petitioner argues that his prolonged use of drugs caused him to be insane at the time of the murder and that, as a result, the trial court should have instructed the jury on the defense of insanity. Although Petitioner raised this claim on direct appeal, he did not present the claim in terms of a deprivation of a federal constitutional right. Generally, a "federal court may not grant habeas corpus relief to a state prisoner who has not exhausted his available state remedies." *Snowden v. Singletary*, 135 F.3d 732, 735 (11th Cir. 1998). The exhaustion of state remedies requires that petitioners "fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (citation omitted) (quotations omitted). Hence, "[i]f state courts are to be given the opportunity to correct alleged violations of prisoners' federal rights, they must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution." *Id.* at 365-66; *see also Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (holding that "the prisoner must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim."); *Snowden*, 135 F.3d at 735 (holding that "to exhaust state remedies fully the petitioner must make the state court aware that the claims asserted present federal constitutional issues.").

In the present case, Petitioner only apprised the state court that the instant claim

involved a violation of state law. He made no reference to the federal constitutional issues raised here. *Ziegler v. Crosby*, 345 F.3d 1300, 1307 (11th Cir. 2003) (finding that the petitioner's federal habeas claims were not raised in the state court when the direct appeal made no reference to the federal constitutional issues raised in the federal habeas petition). Petitioner did not alert the state court to the fact that he was asserting claims under the United States Constitution. "[O]nly claims that were raised as federal constitutional issues before the state courts have been exhausted in the state courts." *Snowden*, 135 F.3d at 736 n.4. Thus, Petitioner's claim is unexhausted.

Moreover, since he would be precluded from now raising this claim in the state courts, it is procedurally defaulted. Petitioner has not shown either cause or prejudice that would excuse the default. Likewise, Petitioner has neither alleged nor shown the applicability of the actually innocent exception. The entire record has been reviewed, and the Court concludes that Petitioner is unable to satisfy either of the exceptions to the procedural default bar. Therefore, this claim must be denied.[14]

## F.    Claim Six

---

[14]In addition, the trial court did not err with regard to this matter. Under *Cochrane v. State,* 61 So. 187, 190 (1913), it is appropriate to give an insanity instruction when there is substantial, though conflicting, evidence of" insanity. Here, there was not substantial evidence of Petitioner's insanity. In fact, Petitioner's own expert witness, Dr. Rufus Vaughn, testified that Petitioner did not suffer from any mental infirmity, disease, or defect. (Ex. A-8 at 1587.) Dr. Vaughn also stated that he did not observe, in his examination of Petitioner, a fixed and settled insanity, either permanent or intermittent. *Id.* at 1588. Petitioner has failed to show that the state court's denial of this claim was contrary to, or involved an unreasonable application of, clearly established federal law or was based on an unreasonable determination of the facts in light of the evidence.

Petitioner contends that an assistant state attorney participated in the prosecution of Petitioner's case despite the fact that he had represented Petitioner in connection with a prior conviction that was used to aggravate his sentence. This claim was raised in Petitioner's first (and amended) Rule 3.850 motion (claim three) and found to be without merit because the attorney's role in Petitioner's case was not of the character of assistance justifying disqualification. The Florida Supreme Court affirmed, finding that the attorney played no substantive role in the prosecution of Petitioner in this case. *Preston v. State*, 528 So. 2d 896, 899 (Fla. 1988).

At the postconviction evidentiary hearing, Donald L. Marblestone, an assistant state attorney at the time of the hearing, testified that he represented Petitioner in an unrelated "resisting an officer without violence charge" during 1974 or early 1975. (Ex. F-1 at 92.) Mr. Marblestone testified that he never relayed any information regarding Petitioner to any member of the State Attorney's Office or to any other person. *Id*. at 95-96. Mr. Marblestone stated that he was not in any manner involved in the prosecution of Petitioner's case. *Id*. at 97. He specifically told all personnel in the State Attorney's Office that he could have nothing to do with the case. *Id*. at 112. Although clerk's office minutes from an October 23, 1980, motion to continue hearing stated that "Don Marblestone, on behalf of Alan Robinson, objected to motion but felt there were valid grounds," Mr. Marblestone did not recall participating in such a hearing and believed that the clerk's office had made a mistake. *Id*. at 97-101.

Mr. Marblestone's testimony reveals that he played no role in the prosecution of

Petitioner's case and that, in fact, he had not discussed any matters relating to Petitioner with anyone in the State Attorney's Office or elsewhere. He purposely isolated himself from Petitioner's case. Moreover, Mr. Marblestone denied participating in the motion to continue hearing. Nevertheless, his participation in such a hearing would not have caused him to have played a substantive role in the prosecution of Petitioner's case. *See State v. Fitzpatrick*, 464 So. 2d 1185 (Fla. 1985) (the disqualification is unnecessary when the attorney did not provide prejudicial information and did not personally assist in the prosecution of the charge).

Under the circumstances this claim is without merit, and Petitioner failed to meet his burden of proving that the state court unreasonably applied controlling Supreme Court precedent or unreasonably determined the facts in denying relief on this claim.

## G.    Claim Seven

Petitioner contends that the State knowingly used incompetent, unqualified, and unreliable expert testimony without revealing to the defense available information relating to the expert witness's incompetence and lack of qualifications. According to Petitioner, Diana Bass, a hair and fiber analyst who was employed by the Florida Department of Law Enforcement ("FDLE") testified at trial about her comparisons of hairs taken from Petitioner's clothing with samples taken from the victim's body. She stated that the hair removed from Petitioner's belt buckle was "consistent in microscopic appearance" with the victim's pubic hairs samples. (Ex. A-6, at 1105.) Petitioner states that Ms. Bass' testimony "was the lynchpin of the State's case"; however, according to Petitioner, Ms. Bass

"completely lacked training, expertise, and knowledge," she was not qualified to give an

expert opinion on this issue, and none of her opinions or conclusions could be trusted.

Further, Petitioner states that Ms. Bass' supervisor, in evaluating her work performance,

found that she was not performing satisfactorily and that she no longer worked for the

FDLE because of her substandard work performance.

This claim was raised in Petitioner's first Rule 3.850 motion (claim one), and the trial

court found as follows:

> The court finds as a matter of fact that Diana Bass' testimony was not
> misleading or based upon improper technique. The record at best shows only
> that Diana Bass was the subject of a critical employee evaluation and was
> being retrained. Robert Kopec, the author of the critical evaluation, indicated
> that he had no knowledge of her work on this case. James Halligan, the
> Defendant's expert, could not disagree with Diana Bass' conclusion, could
> not state that her conclusion was misleading, and could not state that she had
> not used proper techniques.

The Florida Supreme Court found that the trial court's ruling was not erroneous and that

"the state's responsibility under *Brady*[15] [did not extend] to examining in depth the

personnel files of proposed expert witnesses and divulging possible adverse comments to

the defense." *Preston*, 528 So. 2d at 898.

At the evidentiary hearing, James E. Halligan, Jr. testified as an expert in the area of

hair analysis and forensic sciences on behalf of Petitioner. He stated that he could not

disagree with Ms. Bass' conclusion in this case, that he did not know that she did anything

wrong in this case, that he could not say that Ms. Bass' opinion was wrong with regard to

---

[15]*Brady v. Maryland*, 373 U.S. 83 (1963).

the hairs matching, and that Ms. Bass' conclusion was not misleading. *See* Ex. F-1 at 189-99, Ex. F-2 at 205.

Robert Kropec, who was a forensic scientist with the Seminole County Sheriff's Department, testified that he was Ms. Bass' supervisor and that he had evaluated her performance.[16] (Ex. F-2 at 364-67.) However, Mr. Kropec was not involved in Petitioner's case, and he did not have any knowledge of Ms. Bass' work in Petitioner's case. (Ex. F-3 at 483.) Mr. Kropec also did not know if Ms. Bass did anything wrong in Petitioner's case. *Id.* at 483.

Although the record shows that Ms. Bass was the subject of a critical employee evaluation and was retrained, Petitioner has not shown that Ms. Bass' testimony was erroneous or even misleading. In fact, Petitioner's own expert could not say that Ms. Bass' opinion was erroneous.

Additionally, the Eleventh Circuit Court of Appeals has determined that, in order to establish a violation of *Brady*, the petitioner must demonstrate the following:

> (1) that the Government possessed evidence favorable to the defendant (including impeachment evidence); (2) that the defendant does not possess the evidence nor could he obtain it himself with any reasonable diligence; (3) that the prosecution suppressed the favorable evidence; and (4) that had the evidence been disclosed to the defense, a reasonable probability exists that the outcome of the proceedings would have been different.

*United States v. Meros*, 866 F.2d 1304, 1308 (11th Cir. 1989). Here, Petitioner has failed to

---

[16]Mr. Kropec stated that Ms. Bass received a poor evaluation, that he had recommended that she be retrained, and that she had undergone retraining prior to when she resigned (two or three months after the evaluation). (Ex. F-3 at 488-91.)

demonstrate that the State suppressed any favorable evidence relating to Ms. Bass. Certainly, as determined by the Florida Supreme Court, the State was not required to examine in depth Ms. Bass' personnel file and to then divulge potential adverse comments to the defense.

This claim is without merit, and Petitioner failed to meet his burden of proving that the state court unreasonably applied controlling Supreme Court precedent or unreasonably determined the facts in denying relief on this claim.

## H.    Claim Eight

Petitioner contends that he received ineffective assistance of counsel because of counsel's failure to do the following:  a) develop and present evidence of Petitioner's innocence, b) develop an insanity defense, c) consult with experts, d) advise Petitioner regarding State-directed psychiatric evaluations, and e) raise constitutional issues.  This claim was raised in Petitioner's first Rule 3.850 motion (claim four) and was denied because there had been no showing that counsel acted deficiently.  The supreme court affirmed, finding that the record supported the trial court's conclusion that Petitioner was not denied the effective assistance of counsel.  *Preston*, 528 So. 2d at  899.

### 1.    *Issues a. and e.*

Petitioner states in issue a. that, "if the defense can be charged with lack of diligence for failing to discover the facts concealed by the State as alleged throughout this Petition," then counsel should be deemed ineffective as a result of the lack of diligence.  Petitioner states in issue e. that counsel "failed to challenge the constitutional infirmities resulting

from the Eighteenth Circuit State Attorney's Office's prosecution of this case and failed to present substantial constitutional issues addressed in other claims in this Petition."

Since there has been no showing that the State "concealed facts," that the State's prosecution of this case resulted in constitutional infirmities, or that any of the claims raised by Petitioner in this petition are meritorious, these "catchall" issues must be denied.

Moreover, Petitioner's allegations with regard to this issue are vague and conclusory and are inadequate as a matter of law to raise a cognizable claim of ineffective assistance of counsel. *See United States v. Cranshaw*, 817 F. Supp. 723, 728 (N.D. Ill. 1993). Petitioner "must identify the specific acts or omissions of counsel that form the basis for his claim of ineffective assistance." *See United States v. Moya-Gomez*, 860 F.2d 706, 763-64 (7th Cir. 1988), *cert. denied*, 492 U.S. 908 (1989). Petitioner's bald assertions are inadequate to overcome the presumption that counsel acted reasonably. *Matura v. United States*, 875 F. Supp. 235, 237 (S.D.N.Y. 1995). Thus, Petitioner has failed to satisfy either prong of the *Strickland* test, and issues a and e must fail.

In addition, Petitioner has not shown that the state court's rejection of this claim was contrary to, or involved an unreasonable application of, clearly established Supreme Court precedent, or was based upon an unreasonable determination of the facts in light of the evidence presented.

2. *Issue b.*

Petitioner states that counsel failed to develop an insanity defense. According to Petitioner, counsel failed to seek out evidence of Petitioner's long-term drug abuse and

failed to retain an appropriate expert who would have established Petitioner's insanity. Petitioner further alleges that, at the time of the offense he suffered from Chemical Organic Brain Syndrome and toxic psychosis, conditions that caused him to be unable to understand the nature and consequences of his actions.

Arthur Kutsche, who represented Petitioner at trial and was an assistant public defender at the time, testified at the evidentiary hearing held with regard to Petitioner's first Rule 3.850 motion. He testified that Petitioner was seen by Dr. Vaughn, a psychiatrist in Palm Beach County, Florida and Dr. Mussenden, a psychologist from Tampa, Florida. (Ex. F-3 at 417.) Mr. Kutsche felt it was important to find experts in the psychiatric or psychological fields who were knowledgeable about the effects of long-term drug usage, addiction, and the pharmacology of PCP:

> Because part of our defense, I felt, was going to have to be based on either a voluntary intoxication through a use of alcohol and drugs, including PCP, and temporary insanity or diminished capacity based on injection of PCP, and again, with long-term chronic drug abuse, and the affects that it may have had on [Petitioner] the night of the death of the victim.

*Id.* Mr. Kutsche testified that he prepared and presented this type of defense but that the trial court denied a jury instruction on insanity because counsel had not demonstrated that Petitioner suffered from chronic alcoholism. *Id.* at 417-18. Mr. Kutsche felt that Petitioner had a "chronic ailment" and that long-term drug usage had resulted in organic brain damage *Id.* at 419, 421. Mr. Kutsche consulted with four or five doctors in an effort to find someone who had specific expertise with PCP. *Id.* at 423. Mr. Kutsche also had an investigator with the public defender's office assisting him with the case. *Id.* at 434.

Mr. Kutsche fully discussed the case with Petitioner and spoke with some of Petitioner's friends prior to trial. *Id.* at 419-20, 432, 444. Mr. Kutsche acknowledged that, in addition to the insanity defense, he also planned a defense based on Petitioner's denial of committing the crime, which were admittedly inconsistent defenses. *Id.* at 445-46. As discussed by Mr. Kutsche,

> Well, the case was largely, if not entirely, a circumstantial evidence case. And if we overdid it with regard to presenting psychiatric testimony, I'm sure the jury would have gotten the impression that, you know, why are you presenting this psychiatric testimony saying that he was insane at the time it happened if you're also saying that he didn't do it at all.

*Id.* at 446. Mr. Kutsche believed that the circumstantial evidence was consistent with Petitioner either being a witness, a passive participant in the offense, or not being guilty. *Id.* 447. However, it was certain that Petitioner "was very much under the influence of wine and PCP and marijuana during that night and that morning, and he couldn't assist us in what [or] who he actually may have been with, if anybody, or what he had done." *Id.* at 448. As a prosecutor and public defender, Mr. Kutsche had tried about twenty capital cases prior to this case. *Id.* at 452-53.

Dr. Peter Macaluso, an expert in addictionology, testified at the evidentiary hearing on behalf of Petitioner. He stated that addictionology did not become a certifiable speciality until 1983, two years after Petitioner's trial. (Ex. F-2 at 266, 445.) In addition, he agreed with Dr. Vaughan's conclusion that Petitioner only became insane upon ingesting PCP and not otherwise. *Id.* at 338-43, 450.

It is clear that Mr. Kutsche made reasonable efforts to locate an expert with

specialized knowledge of PCP, and he eventually settled on Dr. Vaughn. In fact, Dr. Vaughn testified at the guilt phase of the trial that, during the time-frame of when the victim was killed, 1) Petitioner had a mental infirmity, defect, or disease during the time-frame of when the victim was killed, 2) Petitioner did not know what he was doing, 3) Petitioner was unable to understand the natural consequences of his acts, 4) Petitioner suffered from acute organic brain syndrome, 5) Petitioner was legally insane during a significant part of that time, and 6) Petitioner did not have the ability to form a specific intent. (Ex. A-8 at 1580-1586.) Mr. Kutsche also presented, through the testimony of Petitioner and Scott Preston, a history of drug abuse, particularly involving PCP, along with the fact that Petitioner injected that drug on the night of the murder and suffered its ill-effects. Mr. Kutsche attempted to have the jury instructed on an insanity defense, but, after lengthy argument on the matter, the trial court denied the instruction, finding that there could not be an insanity defense based on the use of alcohol or narcotics.[17] (Ex. A-9 at 1746-51.)

Mr. Kutsche fully informed himself about Petitioner's extensive drug use, and he was familiar with all of the evidence in this case. He discussed the case fully with Petitioner, and he spoke with some of Petitioner's friends prior to trial. Mr. Kutsche

---

[17]The argument on the insanity defense instruction included a discussion of *Cirack v. State*, 201 So. 2d 706 (Fla. 1967) in which the Florida Supreme Court recognized the type of insanity induced by the long and continued use of "intoxicants" that would produce a "fixed and settled frenzy or insanity either permanent or intermittent." *Id.* at 709 (citations omitted). The trial court found that there was no evidence that Petitioner suffered from insanity as a result of long-term drug use and that a single instance or episode of voluntary intoxication was insufficient. (Ex. A-9 at 1747-50.)

understood that there were conflicting defenses and that there were difficult strategic decisions to make under the circumstance of the case. The Court finds that there has been no showing that Mr. Kutsche acted deficiently with regard to this matter or that Petitioner sustained prejudice. Under the circumstances, Petitioner fails to meet his burden of proving that the state courts unreasonably applied controlling Supreme Court precedent or unreasonably determined the facts in denying relief on this issue.

      3.     *Issue c.*

Petitioner states that counsel made no attempt to consult with independent experts to challenge the State's expert, and, in particular, he claims that the testimony of Diana Bass (the State's hair expert) was impeachable.

It is clear from the record that Mr. Kutsche was familiar with Petitioner's case and with the evidence. He consulted with experts regarding Petitioner's mental condition, and he was fully prepared. As discussed in claim seven, Petitioner's own expert, Mr. Halligan, who testified as an expert in the area of hair analysis and forensic sciences on behalf of Petitioner, stated that he could not disagree with Ms. Bass' conclusion in this case, that he did know that she did anything wrong in this case, that he could not say that Ms. Bass' opinion was wrong with regard to the hairs matching, and that Ms. Bass' conclusion was not misleading.

Under the circumstances, Petitioner has not shown that counsel acted deficiently with regard to this issue or that he sustained prejudice. As such, the state court's rejection of this issue was not contrary to, nor did it involve an unreasonable application of, clearly

established Supreme Court precedent, nor was it based upon an unreasonable determination of the facts in light of the evidence presented.

4.     *Issue d.*

Petitioner states that counsel failed to advise him of his rights regarding State-directed psychiatric evaluations. The issue of whether Petitioner's constitutional rights were violated because he was subjected to examinations by state psychiatrists without being advised of his right to counsel will be discussed more fully with regard to claim nine. However, the Court notes that Petitioner underwent a court-ordered psychiatric examination only after placing his sanity at issue and after notice to his counsel. As such, he waived certain constitutional rights, including the right to claim a *Miranda*[18] violation. *See Margrave v. State*, 427 So. 2d 713, 715 (Fla. 1983). Consequently, Petitioner has not shown that any of his constitutional rights were violated when he was subjected to examinations by the State's psychiatrists.

Under the circumstances, Petitioner has not shown that counsel acted deficiently with regard to this issue or that he sustained prejudice. As such, the state court's rejection of this issue was not contrary to, nor did it involve an unreasonable application of, clearly established Supreme Court precedent, nor was it based upon an unreasonable determination of the facts in light of the evidence presented.

I.     **Claim Nine**

Petitioner contends that he was subjected to examinations by state psychiatrists

---

[18]*Miranda v. Arizona*, 384 U.S. 436 (1966).

without being advised of his right to counsel. This claim was raised in Petitioner's first Rule 3.850 motion (claim five) and was denied because, under the factual circumstances of the case, Petitioner was not entitled to *Miranda* warnings. The Florida Supreme Court found that the claim was procedurally barred and that, in any event, the trial court was correct because Petitioner underwent a court-ordered psychiatric examination only after placing his sanity at issue and after notice to his counsel. *Preston*, 528 So. 2d at 899.

Petitioner's claim is procedurally barred because the Florida Supreme Court so determined in its opinion affirming the denial of Petitioner's first Rule 3.850 motion. The denial on procedural bar grounds was a correct application of Florida law. In the present case, Petitioner has not shown either cause or prejudice that would excuse the default. Likewise, Petitioner has neither alleged nor shown the applicability of the actually innocent exception. The entire record has been reviewed, and the Court concludes that Petitioner is unable to satisfy either of the exceptions to the procedural default bar. Therefore, this claim is procedurally barred and is denied.

The Court also notes that Petitioner had filed a Notice of Intent to Rely Upon the Defense of Insanity. *See* Ex. A-15 at 2645. The State then filed a motion for the appointment of experts, which was granted. *Id*. at 2646, 2649. The trial court thereafter entered an order appointing Dr. J. Lloyd Wilder and Dr. Robert G. Kirkland to examine Petitioner. *Id*. at 2662. A copy of the order was sent to Petitioner's counsel. Thus, Petitioner underwent the court-ordered psychiatric examination only after he placed his sanity at issue and after notice was provided to his counsel.

Petitioner relies on *Estelle v. Smith*, 451 U.S. 454 (1981) to support his argument that he should have been advised of his right to counsel prior to the psychiatric evaluations. In *Estelle*, the State, during the sentencing phase, introduced a psychiatrist's testimony regarding his evaluation of the defendant when, during the course of the evaluation, the defendant was never advised of his Fifth Amendment rights and did not have counsel present. The Supreme Court found that the defendant's Fifth Amendment rights had been violated and vacated his death sentence.

The present case is distinguishable. The opinion in *Estelle* involved a criminal defendant who had neither initiated a psychiatric evaluation nor attempted to introduce any psychiatric evidence. Here, Petitioner gave notice of his insanity defense before the psychiatric examinations, and his counsel was provided notice of the examinations. The State used the testimony of these experts only to rebut Petitioner's evidence of insanity. Under the circumstances, the Court finds that this claim is without merit and that there has been no showing that the state court unreasonably applied controlling Supreme Court precedent or unreasonably determined the facts in denying relief on this claim.

**J.      Claim Ten**

Petitioner asserts that keys bearing the name "Marcus Morales" were found in the ash tray of the victim's car on the day that the murder occurred, that "the State never disclosed this critical fact in the State's witness lists or in discovery," and that a *Brady* violation occurred. He also states that appellate counsel was ineffective for failing to raise this matter as part of a *Brady* claim on direct appeal.

The portion of this claim relating to a *Brady* violation was raised in Petitioner's first Rule 3.850 motion (claim two) and was found to be procedurally barred. The Florida Supreme Court likewise found the claim to be procedurally barred. *See Preston*, 528 So. 2d at 898. Petitioner acknowledges the procedural bar. The Court finds that Petitioner has not shown either cause or prejudice that would excuse the default. Likewise, Petitioner has neither alleged nor shown the applicability of the actually innocent exception. The entire record has been reviewed, and the Court concludes that Petitioner is unable to satisfy either of the exceptions to the procedural default bar. Therefore, this portion of the claim is procedurally barred.

The ineffective assistance of appellate counsel portion of this claim was raised in the petition for writ of habeas corpus (claim one) and was denied because counsel could not be faulted for not raising a claim that would have clearly failed. *Preston v. State*, 531 So. 2d 154, 159 (Fla. 1988).

The Eleventh Circuit has applied the Supreme Court's test for ineffective assistance at trial to guide its analysis of ineffective assistance of appellate counsel claims. *Heath v. Jones*, 941 F.2d 1126, 1130 (11th Cir. 1991). This matter was first raised by Petitioner in a motion for new trial, which was denied. (Ex. A-15 at 2770-71, 2782.) The trial court held a lengthy hearing on the motion for a new trial, and found that "I don't think [the keys] are really material." (Ex. A-16 at 2996.)

Petitioner's assertions of materiality in his motion for new trial and at the hearing

thereon were based on conjecture and speculation.[19]  However, "[t]he mere possibility that

an item of undisclosed information might have helped the defense, or might have affected

the outcome of the trial, does not establish 'materiality' in the constitutional sense." *United*

*States v. Agurs*, 427 U.S. 97, 109-10 (1976); *see also  Crawford v. Head*, 311 F.3d 1288, 1329 (11th

Cir. 2002) (the court "cannot consider conjecture" about what evidence "might have

shown" in deciding a Brady claim).  Since Petitioner has not established that the evidence

was material, the trial court did not err with regard to this matter, and appellate counsel

could not be faulted for failing to raise a non-meritorious claim.  Thus, Petitioner has failed

to show that appellate counsel acted deficiently with regard to this matter or that he

sustained prejudice.

In addition, the record reflects that Petitioner's appellate counsel raised several

issues on direct appeal and submitted an initial brief which was comprehensive, thorough,

and well-argued.   Certainly, the record clearly evinces the thoroughness and

reasonableness of appellate counsel's work.  *Cf. Thomas v. Scully*, 854 F. Supp. 944 (E.D.N.Y.

1994) (the appellate brief submitted by counsel clearly showed the thoroughness of

counsel's work).  The fact that this other issue might have succeeded in the state appellate

court "does not lead automatically to the conclusion that [Petitioner] was deprived of a

---

[19]In conjunction with his first Rule 3.850 motion, Petitioner filed the affidavit of
James Tait MacGeen.  (Ex. F-7 at 1281.)  Mr. MacGeen stated, in relevant part, that Marcus
Morales "was a Puerto Rican drug dealer in our neighborhood and he was always hanging
around Scott."  *Id*.  The first Rule 3.850 motion was the first time Petitioner attempted to
actually demonstrate that the existence of the keys might have some relevance to his
defense.

constitutional right when his lawyer failed to assert such a claim." *Woodfork v. Russell*, No. 92-4301, 1994 WL 56933, at *4 (6th Cir. February 24, 1994) (unpublished opinion).

Petitioner has not shown that the state court's denial of this claim was contrary to, or involved an unreasonable application of, clearly established federal law or was based on an unreasonable determination of the facts in light of the evidence.

**K.      Claim Eleven**

Petitioner argues that, because two statutory aggravating circumstances were rejected by the trial court after his original sentencing, the principles of *res judicata*, law of the case, double jeopardy, due process, and fundamental fairness, barred the resentencing court's consideration of those aggravators. (Doc. Nos. 1-3 at 102.)  Specifically, Petitioner takes issue with the resentencing court's consideration of the statutory aggravating circumstances of:  (1) whether the murder was committed for the purpose of avoiding a lawful arrest; and (2) whether the murder was committed for pecuniary gain.  *Id.*

After his trial and first sentencing, the trial court found the following regarding these particular statutory aggravating factors:

> (d) Whether the murder was committed while the Defendant was engaged in the commission of, or an attempt to commit, or flight after committing or attempting to commit, any robbery or kidnaping. (§ 921.141(5)(d) F.S.)
>
> > FINDING:
> > Preston committed the murder immediately after he had committed the crime of robbery and while he was engaged in the commission of the crime of kidnaping.
>
> (e) whether the murder of which the Defendant was convicted was committed for the purpose of avoiding or preventing a lawful arrest or

affecting an escape from custody. (§ 921.141(5)(e) F.S.)

> FINDING
> Preston did not commit the murder for the purpose of avoiding or preventing a lawful arrest or affecting an escape from custody.

(f) Whether the murder of which the Defendant has been convicted was committed for pecuniary gain. (§ 921.141(5)(f) F.S.)

> FINDING:
> Preston committed the murder during and/or after the completion of a robbery of the convenience store where the victim was the employee in charge, which robbery was for pecuniary gain; however, this circumstance is not considered as is has been given consideration under the aggravating circumstance (d) above.

(Ex. A-6 at 2813-2819.) Accordingly, the original sentencing court did not find that the murder was committed for the purpose of avoiding a lawful arrest and determined that the "pecuniary gain" aggravator merged with the statutory aggravator of whether the murder was committed after a robbery or kidnaping. Petitioner argues that the findings regarding (e) and (f) are an acquittal on these factors which should have barred the state from seeking application of these aggravators upon resentencing. (Doc. No. 20 at 35.) Petitioner also asserts that "[t]he evidence was found insufficient in the first sentencing and stands as law of the case and/or Respondents judicata." (Doc. No. 20 at 35.)

Petitioner raised this issue on direct appeal from resentencing[20] and the claim was found to be without merit by the Florida Supreme Court. *Preston v. State*, 607 So. 2d 404, 409 (Fla. 1992). The state court determined that, because there had been no acquittal of the

---

[20]The Court's reference to Petitioner's "resentencing" relates to the second resentencing proceedings held in April 1991.

death penalty itself, "the State was not barred from re-submitting the aggravating factors not found by the judge in the original penalty phase proceeding." *Preston*, 607 So. 2d at 408.

The Supreme Court has recognized that the Double-Jeopardy Clause of the Fifth Amendment embodies three distinct protections for criminal defendants: 1) it protects against a second prosecution for the same offense after acquittal; 2) it protects against a second prosecution for the same offense after conviction; and 3) it protects against multiple punishments for the same offense. *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969) (overruled on other grounds by *Alabama v. Smith*, 490 U.S. 794 (1989)). Constitutional protections against double jeopardy clearly preclude the retrial of a defendant who has been acquitted of the offenses with which he was charged. *See Green v. United States*, 355 U.S. 184, 187-88 (1957). Thus, where a defendant's conviction has been overturned due to insufficient evidence, principles of double jeopardy prohibit retrial. *Burks v. United States*, 437 U.S. 1 (1978). Nevertheless, it is consistent with the guarantee against double jeopardy to retry a defendant who has succeeded in obtaining reversal of his conviction on appeal based on trial errors. *United States v. Tateo*, 377 U.S. 463, 466 (1964).

The double jeopardy considerations that bar re-prosecution after an acquittal do not prohibit review of a sentence. *United States v. DiFrancesco*, 449 U.S. 117, 136 (1980). Further, in *Pearce*, the United States Supreme Court considered whether the imposition of a greater sentence, after conviction on retrial, was barred on double-jeopardy grounds. 395 U.S. at 711. Reasoning that the "power to impose whatever sentence may be legally authorized" was a corollary of the power to retry a defendant whose conviction was set aside on appeal,

the Court held that the prohibition against double jeopardy did not preclude the imposition of a harsher sentence upon re-conviction. *Id*. at 720. The *Pearce* Court explained that the rationale for its holding "rests ultimately upon the premise that the original conviction has, at the defendant's behest, been wholly nullified and the slate wiped clean." *Id.* at 721.

Because penalty-phase proceedings in capital cases are unique, the Supreme Court has modified its view on the distinction between trials and sentences, resulting in an exception to the *Pearce* "clean slate" rationale generally applicable to sentencing at retrial. In *Bullington v. Missouri*, 451 U.S. 430 (1981), the Court considered whether a defendant who was convicted of murder and sentenced to life imprisonment in a bifurcated-capital proceeding could, after successfully appealing his conviction, be subjected to the death penalty on retrial. The Court found that, by sentencing defendant to life imprisonment at the first trial, the jury effectively " 'acquitted' defendant of whatever was necessary to impose the death sentence." *Id*. at 445 (citation omitted); *see also Arizona v. Rumsey*, 467 U.S. 203, 211 (1984) (holding that double-jeopardy clause prohibited State from seeking death penalty at resentencing, where judge sentenced defendant to life imprisonment in the original penalty-phase proceeding).

In *Poland v. Arizona*, 476 U.S. 147 (1986), the Court defined the contours of the "acquittal" analogy employed in *Bullington* and *Rumsey* as it applied to the re-submission at resentencing of an aggravating circumstance rejected at the original trial. In *Poland*, a jury convicted two defendants of capital murder, and the trial court subsequently sentenced them to death. The trial judge failed to find the existence of the "pecuniary gain"

aggravating circumstance but did find the existence of the "especially heinous, cruel, or depraved" factor. On appeal, the Arizona Supreme Court reversed the convictions due to an error in the guilt phase of the proceeding and remanded for a new trial. The defendants were subsequently re-convicted of capital murder and re-sentenced to death. The trial judge found the presence of both the "pecuniary gain" and the "especially heinous, cruel or depraved" aggravating factors. On appeal, the Arizona Supreme Court again found insufficient evidence to support the existence of the "especially heinous, cruel, or depraved" aggravating factor. However, concluding that there was sufficient evidence to support the "pecuniary gain" factor, the court upheld the death sentences.

The United States Supreme Court affirmed, observing that:

> At no point during petitioners' first capital sentencing hearing and appeal did either the sentencer or the reviewing court hold that the prosecution had "failed to prove its case" that petitioners deserved the death penalty. Plainly, the sentencing judge did not acquit, for he imposed the death penalty. While the Arizona Supreme Court held that the sentencing judge erred in relying on the "especially heinous, cruel, or depraved" aggravating circumstance, it did not hold that the prosecution had failed to prove its case for the death penalty.

*Id.* at 154. In so holding, the Court rejected the defendants' argument that the sentencing judge "acquitted" them of the "pecuniary gain" circumstance by not finding its existence in the initial sentencing proceeding and concluded that principles of double jeopardy did not bar consideration at resentencing of evidence relating to that circumstance:

> We reject the fundamental premise of petitioners' argument, namely, that a capital sentencer's failure to find a particular aggravating circumstance alleged by the prosecution always constitutes an "acquittal" of that circumstance for double jeopardy purposes. *Bullington* indicates that the

proper inquiry is whether the sentencer or reviewing court has "decided that the prosecution has not proved its case" that the death penalty is appropriate. We are not prepared to extend *Bullington* further and view the capital sentencing hearing as a set of mini-trials on the existence of each aggravating circumstance. Such an approach would push the analogy on which *Bullington* is based past the breaking point.

\* \* \* \* \* \*

**We hold, therefore, that the trial judge's rejection of the "pecuniary gain" aggravating circumstance in this case was not an "acquittal" of that circumstance for double jeopardy purposes, and did not foreclose its consideration by the reviewing court.** Furthermore, because the reviewing court did not find the evidence legally insufficient to justify imposition of the death penalty, there was no death penalty "acquittal" by that court. The Double Jeopardy Clause, therefore, did not foreclose a second sentencing hearing at which the "clean slate" rule applied.

*Id*. at 155-57 (footnote omitted) (emphasis added). Therefore, under federal double-jeopardy doctrine, where a defendant who has been sentenced to death succeeds in having the sentence overturned on appeal, the "clean slate" rule of *Pearce* applies to the new sentencing proceeding. The State is permitted to resubmit aggravating factors at the new proceeding even if those factors were not found at the initial-sentencing proceeding, provided there is sufficient evidence in the record to sustain the original death sentence.[21]

In the instant case, as in *Poland*, there was no acquittal of the death penalty. Rather, Petitioner's prior violent felony of throwing a deadly missile into an occupied vehicle was

---

[21]Petitioner further urges this Court to adopt the "fundamental fairness" approach utilized by the New Jersey Supreme Court in *State v. Biegenwald*, 110 N.J. 521, 542 A.2d 442 (1988). However, *Biegenwald* dealt with the state's attempt to introduce *new* aggravating factors, not addressed in the original sentencing hearing. In the instant case, the State did not attempt to introduce evidence of a new aggravating factor, but rather re-argued the aggravating factors introduced at his first sentencing phase. As such, *Biegenwald* is inapplicable.

set aside because the court was unable to say that the elimination of that particular aggravating factor constituted harmless error as it related to the death sentence. *See Preston v. State*, 564 So. 2d 120 (Fla. 1990). The resentencing court was constitutionally allowed to consider all aggravating factors on resentencing and the Florida Supreme Court's rejection of this claim did not result in a decision that was contrary to or involved an unreasonable application of, clearly established Federal law. Claim eleven is denied.

**L.      Claim Twelve**

Petitioner claims that the trial court erred in finding the existence of certain aggravating circumstances at his resentencing proceeding. Specifically, Petitioner argues that the trial court erred in: 1) finding that the capital felony was committed for the purpose of avoiding or preventing a lawful arrest; 2) finding that the murder was committed for pecuniary gain where such factor constituted impermissible doubling; and 3) finding that the capital murder was especially heinous, atrocious, and cruel. (Doc. No. 1 at 106.) Petitioner raised this claim on direct appeal from resentencing (claim two) and the Florida Supreme Court determined that the claim was without merit because the facts of the case supported the application of these aggravators. *Preston v. State*, 607 So. 2d 404, 409-10 (Fla. 1992).

> ### a.      *The state court did not err in finding that Earline Walker's murder was committed for the purpose of avoiding or preventing a lawful arrest*

In addressing Petitioner's claim that the trial court had erred in finding that the felony was committed for the purpose of avoiding or preventing a lawful arrest, the Florida

Supreme Court noted:

> We have long held that in order to establish this aggravating factor where the victim is not a law enforcement officer, the State must show that the sole or dominant motive for the murder was the elimination of the witness. However, this factor may be proved by circumstantial evidence from which the motive for the murder may be inferred, without direct evidence of the offender's thought processes.
>
> We have upheld the application of this aggravating circumstance in cases similar to this one, where a robbery victim was abducted from the scene of the crime and transported to a different location where he or she was killed. The only reasonable inference to be drawn from the facts of this case is that Preston kidnapped Walker from the store and transported her to a more remote location in order to eliminate the sole witness to the crime.

*Preston*, 607 So. 2d at 409 (internal citations omitted). Petitioner argues that "there was no evidence presented other than its mere argument" that this aggravating circumstance applied. (Doc. No. 1 at 105.) He further argues that there was evidence that Petitioner's actions were consistent with someone high on PCP. *Id.*

The Florida Supreme Court's determination that Petitioner killed his victim in order to eliminate the sole witness to his robbery must be given deference under 28 U.S.C. § 2254(e). In *Lewis v. Jeffers*, 497 U.S. 764, 781 (1990), the United States Supreme Court stated that "in determining whether a state court's application of its constitutionally adequate aggravating circumstance was so erroneous as to raise an independent due process or Eighth Amendment violation, we think the more appropriate standard of review is the 'rational fact finder' standard established in *Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979)." The inquiry set forth in *Jackson* provides

whether, after viewing the evidence in the light most favorable to the

prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.

*Id.* at 319 (citation omitted) (emphasis in original).

As noted by the Florida Supreme Court, motive for Walker's murder could be inferred from circumstantial evidence without direct evidence of Petitioner's thought processes. *Preston*, 607 2d at 409 (citing *Stafford v. State*, 533 So. 2d 270, 276 n.6 (Fla. 1988) ("Even without direct evidence of the offender's thought processes, the arrest avoidance factor can be supported by circumstantial evidence through inference from the facts shown.")). Given the evidence presented during the penalty phase that Petitioner robbed the convenience store at which Walker worked, and given the circumstances surrounding the location and condition of Walker's body, it could reasonably be inferred that she was taken to the remote field with high weeds after the robbery and stabbed to death in order to eliminate her as a witness to the robbery. Applying the *Jackson* standard, and giving due deference to the state courts' un-rebutted findings of fact, *see* 28 U.S.C. § 2254(e), this Court determines that a rational fact-finder could have determined that Walker's murder was committed for the purpose of avoiding or preventing a lawful arrest. This Court cannot conclude that the state courts' finding of this aggravating circumstance was erroneous.

**b.** **The state courts did not err by finding separate aggravating circumstances of "during the commission of a robbery" and "for pecuniary gain."**

Petitioner argues that Florida law does not permit a finding of separate aggravating

factors for "during the commission of a robbery" and "for pecuniary gain" because doing so would impermissibly double a "single aggravating fact." (Doc. No. 1 at 106.)  Petitioner raised this issue in his direct appeal from resentencing, arguing in terms of state law only, that *Provence v. State*, 337 So. 2d 783, 786 (Fla. 1976) invalidated the use of the same factual predicate to find two aggravators.   The Florida Supreme Court rejected Petitioner's argument that these two aggravating factors should be considered as a single factor.   The court noted:

> We reject Preston's argument that the aggravating factors for pecuniary gain and during the course of a robbery and kidnapping should be considered as a single factor.  *See Bryan v. State*, 533 So. 2d 744 (Fla. 1988) (trial court properly found as separate aggravating factors that murder was committed for pecuniary gain and that murder was committed during the course of a robbery/kidnapping), *cert. denied*, 490 U.S. 1028, 109 S. Ct. 1765, 104 L. Ed. 2d 200 (1989); *Bates v. State*, 465 So. 2d 490 (finding pecuniary gain in aggravation is not error when several felonies, including robbery, have occurred).

*Preston*, 607 So. 2d at 409.

First, this claim is procedurally barred.  Although Petitioner raised this claim in the state court, he argued it only in terms of state law and made no constitutional or federal-law argument on the appeal or in the instant federal petition other than a blanket statement that the trial court's errors violated the Eighth and Fourteenth Amendments to the United States Constitution. (Ex. R at 23; Doc. No. 1 at 105.)  Briefing an issue as a matter of state law is not sufficient to exhaust a federal claim on the same grounds. *Duncan v. Henry*, 513 U.S. 364, 366 (1995).  Petitioner has not shown either cause or prejudice that would excuse the procedural default.  Likewise, Petitioner has neither alleged nor shown the applicability

of the actually innocent exception. The entire record has been reviewed, and the Court

concludes that Petitioner is unable to satisfy either of the exceptions to the procedural

default bar.

Even assuming, *arguendo,* that Petitioner could establish an exception to the

procedural default doctrine, he is not entitled to relief. Because Petitioner cites no federal

case in his habeas petition in support of this claim, he cannot demonstrate that the state

court's determination is contrary to, or an unreasonable application of federal law as

determined by the United States Supreme Court. *See* 28 U.S.C. § 2254(d).[22] Although the

United States Supreme Court has held that the weighing process may be impermissibly

skewed if the sentencing jury considers an *invalid* factor, the Supreme Court has not

explicitly held that the "double counting" of aggravating circumstances renders them

constitutionally invalid. *See, e.g., Jones v. United States*, 527 U.S. 373, 398 (1999) (the Court

has "never before held that aggravating factors could be duplicative so as to render them

constitutionally invalid, nor have we passed on the 'double counting' theory advanced by

the Tenth Circuit in *U.S. v. McCullah*, 76 F.3d 1087, 1112 (10th Cir. 1996)").

Petitioner does not argue that either of the aggravating circumstances at issue were

invalid; rather, he argues that Florida law precludes the use of both because the

aggravators arose from the same set of facts. Thus, Petitioner has failed to demonstrate

---

[22]After the Florida Supreme Court rejected Petitioner's direct appeal from his resentencing, the Eleventh Circuit Court of Appeals held that the merger of aggravating circumstances was an issue of state law. *See Bolender v. State*, 16 F.3d 1547, 1571 (11th Cir. 1994).

that the state courts' rejection of this claim relied on erroneous facts, or applied law contrary to established United States Supreme Court precedent or in a manner which was objectively unreasonable in light of such precedent.[23] Given these considerations, this Court cannot conclude that the Florida Supreme Court unreasonably applied, or reached a decision contrary to, clearly established federal law. Therefore, Petitioner is not entitled to habeas relief on this ground.

### c. The state court did not err by finding that Walker's murder was especially heinous, atrocious, and cruel

Petitioner argues that the trial court erred in finding that Earline Walker's murder was especially heinous, atrocious and cruel because the defense substantially refuted the facts supporting this factor in the resentencing trial. (Doc. No. 1 at 106.) Petitioner raised this issue in the appeal from his resentencing and argued that the medical evidence showed that the initial wound to the victim was made to her throat from behind and that she "immediately lapsed into unconsciousness." (Ex. R at 28.) Petitioner also argued that his drug addiction caused the uncontrollable rage in which the murder was committed, and, as such, the application of this aggravator should be lessened. (Ex. R at 29; Doc. No. 1 at

---

[23]To the extent Petitioner argues that the trial court's violation of state law resulted in a federal due process violation, Petitioner must show that he was deprived of fundamental fairness and that the erroneous ruling "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). However, the trial court did not err under state law when it considered both aggravating circumstances, so it cannot be said that the trial court's ruling deprived Petitioner of fundamental fairness. Any due process claim is therefore without merit.

106.)[24]

The Florida Supreme Court, treating the claim as an argument that the evidence did not support the heinous, atrocious, or cruel aggravator, rejected the claim. *Preston*, 607 So. 2d at 409. Specifically, the court noted:

> Preston forced the victim to drive to a remote location, made her walk at knife point through a dark field, forced her to disrobe, and then inflicted a wound certain to be fatal. Undoubtedly, the victim suffered great fear and terror during the events leading up to her murder. Fear and emotional strain may be considered as contributing to the heinous nature of the murder, even where the victim's death was almost instantaneous.

*Preston*, 607 So. 2d at 410. Applying the *Jackson* standard, and giving due deference to the state courts' un-rebutted findings of fact as required by 28 U.S.C. § 2254(e), the Court determines that a rational fact-finder could have found that the murder of Walker was especially heinous, atrocious, or cruel. Evidence was presented at the resentencing of a defensive wound on the victim's hand. (Ex. Q-5 at 843.) That the victim undoubtedly suffered fear and terror in the events leading up to her murder was supported by evidence presented at the resentencing.[25] The victim was moved to a location away from the

---

[24]To the extent that Petitioner argues that his drug use mitigated this aggravator, this is addressed in claim fifteen and will not be further addressed in relation to this issue.

[25]The Florida Supreme Court has held that "fear, emotional strain, and terror of the victim during the events leading up to the murder may make an otherwise quick death especially heinous, atrocious, or cruel." *James v. State*, 695 So. 2d 1229, 1235 (Fla. 1997). The court has also held that "the HAC aggravator focuses on the means and manner in which death is inflicted and the immediate circumstances surrounding the death." *Brown v. State*, 721 So. 2d 274, 277 (Fla. 1998). The Florida Supreme Court has upheld the HAC aggravator where the victim was conscious for merely seconds. *See Rolling v. State*, 695 So. 2d 278, 296 (Fla. 1997).

convenience store at which she worked and forced to walk five or six hundred feet from her car into an empty, remote field. (Ex. Q-5 at 855.) The victim's clothing was not torn and had no traces of blood, indicating that the victim was forced to remove them before she was killed. (Ex. Q-5 at 875.) Given the evidence presented, Petitioner has not demonstrated that the Florida court's disposition of this claim was contrary to, or constituted an unreasonable application of governing precedent of the United States Supreme Court. Petitioner is not entitled to habeas relief on this ground.

**M.**     **Claims Thirteen and Eighteen (a)**

As claim thirteen, Petitioner argues that he was denied due process under the Fifth and Fourteenth Amendments to the United States Constitution because of the admission of graphic and gruesome photographs depicting wounds to the victim that were inflicted either after her death or after loss of consciousness. (Doc. No. 1 at 108.) Petitioner raised this issue on direct appeal of his resentencing and argued, in terms of state law only, that the wounds graphically portrayed in the photographs were inflicted post mortem and as such, were "totally irrelevant to any aggravating circumstance." (Ex. R at 31.) In claim eighteen (a), Petitioner argues that the trial court erred by allowing a pathologist to testify about numerous gruesome injuries inflicted on the victim after she lost consciousness. (Doc. No. 1 at 120.) Petitioner raised this issue on direct appeal of his resentencing and argued, in terms of state law only, that the state was limited to presenting evidence at the

penalty phase to prove the enumerated aggravating factors or to rebut mitigating factors argued by the defense. (Ex. R at 51.)

The Florida Supreme Court denied both claims, finding no error in the admission of the testimony concerning the wounds inflicted after the initial neck wound and no abuse of discretion in the admission of the two photographs of the victim. *Preston*, 607 So. 2d at 410. The court further noted:

> Injuries inflicted after the victim was rendered unconscious are part of the criminal episode. The medical examiner's testimony demonstrated the deliberate nature of the crime and refuted Preston's claim that he was in a PCP-induced frenzy at the time of the murder. Further, the jury was specifically instructed that it could not consider injuries inflected after the victim lost consciousness in determining whether the murder was especially heinous, atrocious, or cruel.
>
> . . .
>
> The photographs were relevant to the circumstances of the murder, in that they show the field the victim was forced to walk across, that she was forced to strip to her tennis shoes, then brutally killed. Further the deliberate nature of the wounds was relevant to refute Preston's claim that the murder was committed in a PCP induced frenzy.

*Preston*, 607 So. 2d at 411. Petitioner has not shown, nor does the Court find upon its own review, that this claim warrants habeas relief.

First, these claims are procedurally barred. Although Petitioner referenced the Constitution in the headings describing his claims in his brief on direct appeal of his resentencing, he presented his arguments in terms of state law error only. (Ex. R at 30-32, 50-52); ( Doc. No. 20 at 38-39, 48-49.) Briefing an issue as a matter of state law is not sufficient to exhaust a federal claim on the same grounds. Petitioner has not shown either

cause or prejudice that would excuse the default. Likewise, Petitioner has neither alleged nor shown the applicability of the actually innocent exception. The entire record has been reviewed, and the Court concludes that Petitioner is unable to satisfy either of the exceptions to the procedural default bar.

Next, even assuming *arguendo*, that Petitioner can establish an exception to the procedural default doctrine, he is not entitled to relief. Petitioner is challenging evidentiary rulings by a trial court, which is a state law issue. It is not the province of a federal court to "re-examine state-court determinations of state-law questions" and a claim that an evidentiary ruling was allegedly incorrect under state law is not a basis for federal habeas relief. *Estelle v. McGuire*, 502 U.S. 62, 68-72 (1991). State-court evidentiary rulings do not rise to the level of due process violations unless they offend some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental. *See Montana v. Egelhoff*, 518 U.S. 37, 43 (1996) (*quoting Patterson v. New York*, 432 U.S. 197, 202 (1977)). Thus, an alleged error predicated upon the admission of evidence found to be admissible based upon a state court's interpretation and application of state law is not cognizable in federal habeas corpus review unless the failure amounted to a denial of fundamental fairness. *See Estelle,* 502 U.S. at 67-68. This case does not implicate such concerns.

To show a denial of fundamental fairness, any error must be "material in the sense of a crucial, critical, highly significant factor." *Hills v. Henderson*, 529 F.2d 397, 401 (5th Cir. 1976) (internal citation omitted). Petitioner argues that the errors were material and cannot

be deemed harmless "[g]iven the importance of the finding that the offense was especially heinous, atrocious and cruel." (Doc. No. 1 at 121, 106.) However, in his opening statement, Petitioner urged, as mitigation, that his use of PCP on the night of the murder greatly impaired his judgment and ability to control his behavior. (Ex. Q-5 at 839.) The Florida Supreme Court determined that the pathologist's testimony and the photographs were relevant to show the deliberate nature of the crime and to refute Petitioner's claim that he was in a PCP induced frenzy at the time of the murder. *Preston,* 607 So. 2d at 410-411.

Under Florida law, the State is allowed an opportunity to rebut the existence of mitigating factors urged by the defendant. *Ellis v. State*, 622 So. 2d 991, 1001 (Fla. 1993). Accordingly, because the State presented the testimony to rebut a mitigating factor set forth by Petitioner, he cannot even establish a state law evidentiary error. *See Kormondy v. State*, 845 So. 2d 41, 52 (Fla. 2003) (the state has the right to rely on the defense's opening statement of its mitigation as a basis for rebuttal). Moreover, the jury was instructed that it could not consider injuries inflicted after the victim lost consciousness in determining whether the murder was especially heinous, atrocious, or cruel. (Ex. Q-6 at 1098.) Jurors are presumed to follow the law as they are instructed. *Raulerson v. Wainwright*, 753 F.2d 869, 876 (11th Cir. 1985). As such, Petitioner cannot show an error that was "material in the sense of a crucial, highly significant factor" and cannot demonstrate a denial of fundamental fairness.

Accordingly, claims thirteen and eighteen (a) are denied pursuant to 28 U.S.C. § 2254(d).

## N.    Claim Fourteen

Petitioner argues that the trial court erred by refusing to allow him to present evidence in mitigation that was directly relevant to statutory mitigating circumstances. Specifically, Petitioner alleges that the excluded evidence included the testimony of two witnesses who were prepared to testify that Petitioner's brother, Scott Preston, had admitted to them that he, not Petitioner, killed Walker. (Doc. No. 1 at 110.) Petitioner raised this claim on direct appeal of his resentencing and argued that he wanted to present the testimony, not for the purpose of creating lingering doubt as to his guilt, but rather as directly relevant to the statutory mitigators of whether: 1) Petitioner was an accomplice in a capital felony committed by another person; and 2) Petitioner acted under extreme duress or under the substantial domination of another. (Ex. R at 35.) The Florida Supreme Court rejected the claim, noting:

> Next, Preston argues that the lower court erred in refusing to permit evidence that he claims was relevant to statutory mitigating circumstances. Pursuant to the State's motion in limine, the court refused to allow Preston to present the testimony of two witnesses who would have testified that Preston's brother, Scott, told them that he committed the murder. The affidavits of the two potential witnesses were made a part of the record. One witness would have testified that Scott Preston told him that he and another person committed the robbery and murder. The other witness would have testified that Scott told him that he committed the murder and that Robert Preston was drunk, high, and passed out at the time.
>
> Preston claims that this evidence was relevant to establish the mitigating circumstances that he was an accomplice in a murder committed by another and that he acted under extreme duress or the substantial domination of another. The testimony the two witnesses would have given does not tend to establish either of these mitigating factors. The only relevance of the testimony was to suggest that someone else committed the murder, thereby

> creating residual doubt about the defendant's guilt of the crime. Residual
> doubt is not an appropriate non-statutory mitigating circumstance. *King v.
> State*, 514 So. 2d 354 (Fla. 1987), *cert. denied*, 487 U.S. 1241, 108 S. Ct. 2916, 101
> L. Ed. 2d 947 (1988). The trial court properly excluded this testimony.

*Preston*, 607 So. 2d at 411.

To the extent Petitioner argues that he did not seek to introduce the affidavits of the

witnesses' testimony as "lingering doubt" evidence, but rather as evidence of the statutory

mitigating circumstances that Petitioner was acting under extreme duress or the substantial

domination of another, the claim is implausible.[26] The affidavit of John Yazell indicated

that Scott Preston, Petitioner's brother told him that Petitioner was "passed out" at the time

of the murder and that Scott told him "a lot of times that [Petitioner] was not with him

when all this happened." (Ex. Q-12 at 1990, 1992.) The affidavit of Steven Hagman also

indicated that Scott Preston, not Petitioner, murdered Walker. (Ex. Q-12 at 1985-1988.)

Petitioner does not explain how these affidavits are remotely relevant to the issues of

whether he was an accomplice in the murder or acting under extreme duress when killing

Walker. In fact, the only purpose of the affidavits would be to cast doubt on Petitioner's

guilt.

To the extent Petitioner now argues that the trial court erred by refusing to consider

"lingering doubt" evidence, the claim also fails. Under Florida law, residual doubt is not

considered mitigation. *Zeigler v. Crosby*, 345 F.3d 1300, 1310 (11th Cir. 2003) (*per curiam*)

("Florida does not recognize residual or lingering doubt as a valid non-statutory mitigating

---

[26]The affidavits were tendered to the trial court in the form of a proffer. (Ex. Q-6 at
1041-42.)

circumstance."); *Darling v. State*, 808 So. 2d 145, 162 (Fla. 2002) ("We have repeatedly observed that residual doubt is not an appropriate mitigating circumstance."). Moreover, there is no constitutional right to have residual doubt considered as mitigation. *See Oregon v. Guzek*, 546 U.S. 517, 526-27 (2006) (holding that the Constitution does not prohibit a state from limiting the innocence-related evidence a capital defendant can introduce at a sentencing proceeding). Petitioner has failed to demonstrate that the state court's rejection of his claim was inconsistent with any decision from the United States Supreme Court or was an unreasonable application of any such precedent. Claim fourteen is denied.

## O.    Claim Fifteen

Petitioner alleges that the trial court erred by rejecting three statutory mitigating circumstances.[27]   In particular, Petitioner argues that the following statutory mitigators were applicable:  1) the capital felony was committed while Petitioner was under the influence of extreme mental or emotional disturbance; 2) Petitioner's capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law was substantially impaired; and 3) Petitioner's age at the time of the crime.  (Doc. No. 1 at 112.)

---

[27]Florida Statute § 921.141(6) lists seven mitigating circumstances which the jury and trial court must consider in deciding whether the death penalty is appropriate. The trial court in this case determined that only one of these statutory mitigating factors existed with respect to Petitioner - that of Petitioner's age.  The trial court also found five non-statutory mitigating circumstances:  1) Petitioner had a difficult and neglected childhood; 2) Petitioner had a good prison record; 3) Petitioner had good potential for rehabilitation; 4) Petitioner expressed remorse; and 5) Petitioner was a loving son with other positive qualities.  *See* Ex. Q-10 at 1914-1925.  The trial court gave minimal weight to every mitigating circumstance.

The trial court rejected the first two factors and accorded little weight to the third. Petitioner raised this issue on direct appeal of his resentencing and argued, in terms of state law only, that "when a reasonable quantum of competent, un-controverted evidence of a mitigating circumstance is presented, the trial court must find that the mitigating circumstance has been proved." (Ex. R at 42.) The Florida Supreme Court rejected the claim. *Preston*, 607 So. 2d at 412. Petitioner has not shown, nor does the Court find upon its own review, that this claim warrants habeas relief.

First, this claim is procedurally barred. In his brief on direct appeal of his resentencing, Petitioner presented his arguments to the Florida Supreme Court in terms of state law only. (Ex. R at 37-42.) Petitioner has not shown either cause or prejudice that would excuse the default. Likewise, Petitioner has neither alleged nor shown the applicability of the actually innocent exception. Thus, Petitioner is unable to satisfy either of the exceptions to the procedural default bar.

Next, even assuming *arguendo*, that Petitioner can establish an exception to the procedural default doctrine, he is not entitled to relief. The law is clearly established with respect to the consideration of mitigating factors. The Eighth and Fourteenth Amendments require that the sentencer in a capital case consider "any evidence which mitigates against the imposition of the death penalty." *Glock v. Moore*, 195 F.3d 625, 637 (11th Cir. 1999) (*citing Lockett v. Ohio*, 438 U.S. 586, 608 (1978)). A sentencer may not refuse to consider any relevant mitigating evidence. *Eddings v. Okla.*, 455 U.S. 104 (1982). "The sentencer . . . may determine the weight to be given relevant mitigating evidence. But [the sentencer] may not

give it no weight by excluding such evidence from [his] consideration." *Id.*

Petitioner argues that "when a reasonable quantum of competent, uncontroverted evidence of a mitigating circumstance is presented, the trial court must find that the mitigating circumstance had been proved." (Ex. R at 42.)[28]  Although a court is required to *consider* mitigation evidence, contrary to Petitioner's assertion, the court is not required to find that a particular mitigation factor has been proved.  As summarized by the Eleventh Circuit:

> [W]hile sentencing courts may not refuse to consider evidence offered in mitigation, they need not decide that the facts established by that evidence have mitigating force in the context of the case. The Constitution requires that the sentencer be allowed to consider and give effect to evidence offered in mitigation, but it does not dictate the effect that must be given once the evidence is considered; it does not require the sentencer to conclude that a particular fact is mitigating or to give it any particular weight.

*Schwab v. Crosby*, 451 F.3d 1308, 1329 (11th Cir. 2006).

Petitioner points to the expert testimony of four mental health experts who testified at the sentencing hearing and who were in agreement that the mental mitigating factors were present.  Psychologist Dr. Cliff Levin  testified that Petitioner "was having difficulty conforming his behavior to the confines of the law" at the time of the murder; that Petitioner was "significantly psychologically impaired" because of his ingestion of PCP; and that Petitioner's ability to control his behavior was significantly impaired. (Ex. Q-5 at 935-

---

[28]In making this claim that, Petitioner relies only on Florida law (Ex. R at 42) (citing *Nibert v. State*, 574 So. 2d 1059, 1062 (Fla. 1990)).  A habeas claim grounded on issues of state law provides no basis for habeas relief.  *See Estelle*, 502 U.S. at 67-68 ("federal habeas corpus relief does not lie for errors of state law").

942.)  Psychiatrist Rufus Vaughn testified that at the time of the murder, Petitioner was unable to control his behavior or to appreciate the wrongfulness of his actions; that Petitioner's ability to conform his conduct or behavior to the requirements of law was significantly impaired; and that, based on his PCP intoxication, Petitioner was suffering from extreme mental disturbance. (Ex. Q-5 at 966-969.)  Psychologist Dr. Harry Krop testified that Petitioner's judgment was impaired at the time of the murder, probably significantly, and that it would have been difficult for Petitioner to appreciate the criminality of his conduct and actions on the night of the murder. (Ex. Q-8 at 1379-1380.) Psychologist Dr. Gerald Mussenden testified that on the night of the murder, Petitioner was under the influence of PCP; that his capacity to appreciate the criminality of his acts or to conform his conduct to society's laws could have been impaired; and that Petitioner's ability to control his behavior was impaired. (Ex. Q-6 at 1032-1034.)

In its evaluation of whether the murder was committed while Petitioner was under the influence of extreme mental or emotional disturbance, the trial court determined that, while the evidence revealed that Petitioner used drugs regularly, the only direct evidence that Petitioner had used PCP on the night of the murder was Petitioner's own testimony. (Ex. Q-10 at 1918.)  The court further reasoned that Petitioner's actions on the night of the murder indicated that he was capable of planning and of deliberate thought.  The court concluded:

> [T]hough the evidence does reveal that the Defendant was under the influence of some drugs the night of the murder, he was not intoxicated to the point of <u>extreme</u> mental or emotional disturbance sufficient to establish

a legal basis for this statutory mitigating circumstances. In fact, although Preston has not argued that this drug use should be considered as a nonstatutory mitigating circumstance, the Court finds that his drug and alcohol use does not even rise to the level of a nonstatutory mitigating circumstance.

(Ex. Q-10 at 1919.) (emphasis in original). In evaluating whether Petitioner had the capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of law, the court relied on its analysis of the previous factor and also noted that Petitioner had taken steps to avoid detection, indicating that Petitioner's capacity to appreciate the criminality of his conduct had not been substantially impaired. (Ex. Q-10 at 1920.) The Florida Supreme Court, after examining the trial court's analysis of these factors, held that:

> The decision as to whether a mitigating circumstance has been established is within the trial court's discretion. Reversal is not warranted simply because an appellant draws a different conclusion. The trial court's determination regarding the establishment of these mitigating factors is supported by competent, substantial evidence.

*Preston*, 607 So. 2d at 412.

Clearly, as was constitutionally required, the trial court considered and weighed the testimony of Petitioner's witnesses and weighed Petitioner's history of drug abuse and purported drug use on the night of the murder, but either did not believe the testimony, or gave it little weight. The state court was not required to accept the mitigating evidence. *Atkins v. Singletary*, 965 F.2d 952, 962 (11th Cir. 1992). The Florida Supreme Court reviewed the trial court's evaluation of the evidence and concluded that the trial court's determinations were supported by competent, substantial evidence. Petitioner has not

demonstrated that the Florida Supreme Court's evaluation of this issue was contrary to, or an unreasonable application of, clearly established federal law or an unreasonable determination of the facts. Accordingly, this claim is denied pursuant to 28 U.S.C. § 2254(d).

**P.    Claim Sixteen**

Petitioner claims that the imposition of the death penalty is proportionately unwarranted when compared with other cases and that such application of the death penalty violates the Eighth and Fourteenth Amendments to the U.S. Constitution. In particular, Petitioner argues that there exists only one valid aggravating circumstance, the fact that the crime was committed in the course of a felony and for pecuniary gain, and even if the heinous, atrocious and cruel aggravating circumstance is sustainable, there are only two valid aggravating circumstances. (Doc. No. 1 at 116.) Petitioner challenged the proportionality of his sentence on his direct appeal of his resentencing and the Florida Supreme Court rejected the claim, noting:

> We also reject Preston's claim that the death penalty is not proportionally warranted. The four aggravating factors present in this case outweigh the single statutory mitigating factor and the minimal non-statutory mitigation offered by Preston. This cruel, cold-blooded killing clearly falls within the class of murders for which the death penalty may be properly administered.

*Preston*, 607 So. 2d at 412. Petitioner has not shown, nor does the Court find upon its own review, that this claim warrants habeas relief.

The United States Supreme Court has held that a proportionality review is not required by the U.S. Constitution. *See Pulley v. Harris*, 465 U.S. 37, 43-44 (1984). In addition,

67

even if state law requires a proportionality review, the Eleventh Circuit has held that

> A federal habeas court should not undertake a review of the state supreme court's proportionality review and, in effect, "get out the record" to see if the state court's finding of fact, their conclusion based on a review of similar cases, was supported by the "evidence" in the similar cases. To do so would thrust the federal judiciary into the substantive policy making area of the state.

*Moore v. Balkcom*, 716 F.2d 1511, 1518 (11th Cir.1983). Accordingly, to the extent Petitioner now argues that the Florida Supreme Court's proportionality review was inadequate, errors of state law are not cognizable in federal habeas and the issue of whether Petitioner's death sentence is proportional will not be reviewed by this Court. *See Bush v. Singletary*, 99 F.3d 373, 375 (11th Cir. 1996) ("Proportionality review of the kind at issue is not required by the federal constitution, but only by Florida law. A federal court may not issue the writ on the basis of a perceived error of state law . . . Florida has conducted the proportionality review its law requires. No federal constitutional claim meeting the requirements of § 2244(b)(2)(B) is presented") (internal citations omitted). Moreover, the Eleventh Circuit has rejected the argument that federal law requires those state courts which are required to undertake such review, to "make an explicit detailed account of their comparisons." *Lindsey v. Smith*, 820 F.2d 1137, 1154 (11th Cir. 1987). Accordingly, to the extent Petitioner challenges the Florida Supreme Court's proportionality review and requests the Court to conduct a *de novo* proportionality review of his sentence, he is not entitled to such relief. The Florida Supreme Court determined that no re-sentencing was warranted. There is no evidence that this determination was arbitrary or capricious. The review provided an

adequate safeguard of Petitioner's constitutional rights. This claim is denied.

## Q.     Claim Seventeen

Petitioner argues that the statutory aggravating factor of an especially heinous, atrocious, or cruel murder is unconstitutionally vague under the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.   Specifically, Petitioner contends that "[t]he limiting construction used by the Florida Supreme Court as to this statutory aggravating factor is too indefinite to comport with constitutional requirements. The inconsistent approval of that factor by the Florida Supreme Court under the same or substantially similar factual scenario shows that the factor remains prone to arbitrary and capricious application." (Doc. No. 1 at 118.)  Petitioner raised this issue as point eight in his direct appeal from the resentencing and argued that the definitions of the terms used in the aggravating factor do not provide any guidance to the jury when the factor is first weighed in issuing a sentencing recommendation. (Ex. R at 47.)  The Florida Supreme Court rejected Petitioner's argument, noting:

> We reject Preston's argument that the aggravating factor of heinous, atrocious, or cruel is unconstitutionally vague. Because of this Court's narrowing construction, the United States Supreme Court upheld the aggravating circumstance of heinous, atrocious, or cruel against a vagueness challenge in *Proffitt v. Florida*, 428 U.S. 242, 96 S. Ct. 2960, 49 L. Ed. 2d 913 (1976). Unlike the jury instruction found wanting in *Espinosa v. Florida*, 505 U.S. 1079, 112 S. Ct. 2926, 120 L. Ed. 2d 854 (1992), the full instruction on heinous, atrocious, or cruel now contained in Florida Standard Jury Instructions in Criminal Cases, which is consistent with *Proffitt*, was given in Preston's case.

*Preston*, 607 So. 2d at 410.  Upon review of the record and the applicable law, it is clear that

the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

In 1973, the Florida Supreme Court  limited the scope of the especially heinous, atrocious and cruel ("HAC") aggravator to "those capital crimes where the actual commission of the capital felony was accompanied by such additional acts as to set the crime apart from the norm of capital felonies-the conscienceless or pitiless crime which is unnecessarily tortuous to the victim." *State v. Dixon*, 283 So. 2d 1, 9 (Fla. 1973).  As so construed and limited, the Florida HAC aggravator was specifically upheld against constitutional attack in *Proffitt v. Florida*, 428 U.S. 242, 255-56 (1976) ("We can not say that the provision, as so construed, provides inadequate guidance to those charged with the duty of recommending or imposing sentences in capital cases.") (internal citation omitted). The addition of the last sentence of the instruction in *Dixon* served to cure the flaw found to be unconstitutional in *Godfrey v. Georgia*, 446 U.S. 420 (1980), *Maynard v. Cartwright*, 486 U.S. 356 (1988), and *Shell v. Mississippi*, 498 U.S. 1 (1990), the cases relied upon by Petitioner to support this claim.

Notwithstanding the decisions in *Dixon* and *Proffitt*, the state's standard jury instructions were not amended to incorporate the *Dixon* limitation on the HAC aggravator until 1990. See *In re Standard Jury Instructions Criminal Cases* No. 90-1, 579 So. 2d 75 (Fla. 1990).  As a result, in some capital cases tried in Florida before 1990 the jury instruction

concerning the HAC aggravator consisted of nothing more than a reading of the statute itself without a definition of any of the included terms. *See, e.g., Espinosa v. Florida*, 505 U.S. 1079 (1992). By contrast, in this case (Petitioner's resentencing was in 1991), the trial judge gave the full *Dixon- Proffitt* jury instruction.

> Heinous means extremely wicked or shockingly evil; atrocious means outrageously wicked and vile; and cruel means designed to inflict a high degree of pain with utter indifference to, and enjoyment of, the suffering of others. What is intended to be included are those first degree murders where the actual commission of the homicide was accomplished by such additional acts as to set the crime apart from the norm of first degree murders – the conscienceless or pitiless crime which is unnecessarily tortuous to the victim.
>
> If the victim in this case lost consciousness, any event which occurred after unconsciousness began cannot be considered as evidence of the especially wicked, evil, atrocious, or cruel nature of the crime. Any event after the death of the victim cannot be considered as evidence of the especially wicked, evil, atrocious, or cruel nature of the crime. If you have reason to doubt whether some particular event occurred after unconsciousness or death, you cannot consider that event in deciding whether the State has established this aggravating circumstance.

(Ex. Q-6 at 1098-99.)

While Petitioner now claims that the HAC jury instruction given to the jury was "precisely" the same instruction struck down in *Shell*, the instruction given in this case, unlike those cited by Petitioner, included the additional clarifying sentence approved in *Proffitt*, telling the jurors that "[w]hat is intended to be included are those first degree murders where the actual commission of the homicide was accomplished by such additional acts as to set the crime apart from the norm of first degree murders – the conscienceless or pitiless crime which is unnecessarily tortuous to the victim." (Ex. Q-6 at 1098-1099.) Because the instructions to Petitioner's jury did not suffer the same defect as

the jury instructions in the cases he cites, the Florida Supreme Court did not rule contrary to established federal law or reject this claim unreasonably. Accordingly, claim seventeen is without merit and is denied.

**R.     Claim Eighteen (b)**

Petitioner claims that he was denied due process of law under the Fifth, Eighth, and Fourteenth Amendments of the United States Constitution by the trial court's refusal to use two special jury instructions requested by the defense. (Doc. No. 1 at 120.) Specifically, Petitioner notes that he requested that the following instructions, which were accurate statements of the law, be read to the jury:

> Two aggravating circumstances may not refer to the same aspect of the offense. If you find that two aggravating circumstances are proven beyond a reasonable doubt, but that they refer to the same aspect of the offense, then you should consider them as only one aggravating circumstance.
> . . .
> It must be emphasized that the procedure to be followed by the jury is not a mere counting process of the number of aggravating circumstances and the number of mitigating circumstances, but rather a reasoned judgment as to what factual situations require the imposition of death and which can be satisfied by life imprisonment in light of the totality of the circumstances present.

(Doc. No. 1 at 121);(Ex. Q-10 at 1741.) Petitioner raised these issues on direct appeal of his resentencing. (Ex. R. at 53-54.) The Florida Supreme Court denied the claim, finding no error in the trial court's refusal to give the two special instructions. *Preston*, 607 So. 2d at 412. Petitioner has not shown that he is entitled to habeas relief.

On direct appeal of his resentencing, Petitioner maintained that the state court's

refusal to give the first instruction deprived him of an opportunity to argue that the aggravating circumstances of "in the course of a felony" and "for pecuniary gain" should not count as separate aggravators. (Ex. R at 53.) However, Petitioner supported his entitlement to the instruction only by citation to *Gregg v. Georgia*, 428 U.S. 153, 192-93 (1976) and *Furman v. Georgia*, 408 U.S. 238 (1972). Petitioner's sole argument on this point was that the jury instructions were inadequate "to avoid the same infirmities in this death sentence that inhered in death sentences imposed under the pre-*Furman* statute." (Ex. R at 54.) In *Gregg*, the Supreme Court determined that "[w]hen erroneous instructions are given, retrial is often required. It is quite simply a hallmark of our legal system that juries be carefully and adequately guided in their deliberations." *Gregg*, 428 U.S. at 192-93. As such, the holding in *Gregg* goes to the remedy for inadequate instructions and does not support Petitioner's contention that the instructions, as given in the instant case, were inadequate.

Neither does Petitioner argue that any instruction given by the trial court was erroneous. Rather, Petitioner's claim goes to the jury's alleged combination *vel non* of aggravating factors rather than the erroneousness of the given jury instructions. *See* discussion *supra* Claim 12. Furthermore, the Supreme Court's holding in *Furman* does not support this claim. *Furman*, focused on the arbitrary nature by which death sentences had been imposed, and it is inapplicable to Petitioner's argument that aggravating factors should be combined when arising from the same set of operative facts. Petitioner's arguments regarding this instruction are simply unrelated to either Supreme Court

holding.

Petitioner argues that the state court's refusal to give the second requested instruction was especially relevant because the jury was instructed on four statutory aggravating factors as opposed to three statutory mitigating circumstances and the "catch-all" mitigator. (Doc. No. 1 at 122.) As such, Petitioner argues, "[i]t was critical that the jury be told that it was not a mere counting process, but in fact the jury had to engage in reasoned weighing of the relative strengths of the aggravating circumstances versus the mitigating circumstances." (Doc. No. 1 at 122.) Petitioner has not raised a constitutional claim regarding this instruction.

A state has wide discretion in imposing the death penalty, including the manner in which aggravating and mitigating circumstances are to be weighed. *Kansas v. Marsh*, 548 U.S. 163, 174 (2006). At the conclusion of Petitioner's resentencing, the trial court provided the jury with the following instructions regarding the weighing of aggravating and mitigating circumstances:

> If you find the aggravating circumstances do not justify the death penalty, your advisory sentence should be one of life imprisonment without possibility of parole for twenty-five years.
>
> Should you find sufficient aggravating circumstances do exist, it will then by your duty to determine whether mitigating circumstances exist and that the aggravating circumstances outweigh the mitigating circumstances.
>
> [lists mitigating circumstances]
>
> Each aggravating circumstance must be established beyond a reasonable doubt before it may be considered by you in arriving at your decision.

> If one or more aggravating circumstances are established, you should consider all the evidence tending to establish one or more mitigating circumstances and give that evidence such weight as you feel it should receive in reaching your conclusion as to the sentence that should be imposed.

(Ex. Q-6 at 1098-1100.) The jury was specifically instructed that it was to determine whether sufficient aggravating circumstances existed to justify the imposition of the death penalty and, if so, whether the aggravating circumstances were sufficient to outweigh the mitigating circumstances. (Ex. Q-6 at 1097, 1099-1100.) Petitioner's argument that the jury could interpret the weighing as a "mere counting process" is belied by the trial court's further instruction to the jury that it "should consider all the evidence tending to establish one or more mitigating circumstances and give that evidence such weight as you feel it should receive in reaching your conclusion as to the sentence that should be imposed." (Ex. Q-6 at 1100.) Because the jury was instructed to consider all mitigating evidence in reaching its penalty recommendation, there was no constitutional violation in the given instructions. *Blystone v. Pennsylvania*, 494 U.S. 299, 307 (1990) (the constitutional requirement for individualized sentencing in capital cases is satisfied by allowing the jury to consider all relevant mitigating evidence.).

Petitioner has failed to demonstrate that the Florida Supreme Court's rejection of the arguments made in this claim was contrary to, or an unreasonable application of clearly established federal law or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Accordingly, this claim is denied pursuant to 28 U.S.C. § 2254(d).

## S.    Claim Nineteen

Petitioner alleges that counsel was ineffective at his resentencing for failing to call witness Arlene Cobb ("Cobb") to testify as to her observation of him on the night of the murder in order to corroborate his drug use at the time Walker was killed. (Doc. No. 1 at 123.) Petitioner also alleges that his resentencing counsel failed to pursue laboratory testing that could have confirmed that Petitioner injected PCP at, or near the time of, his arrest (Doc. No. 1 at 124.)[29]

Petitioner raised the issue of Cobb's testimony in his third Rule 3.850 motion for postconviction relief, and the trial court denied the claim on the ground that counsel had made a reasonable strategic decision not to call Cobb as a witness, but rather to allow her testimony to come in through medical experts. (Ex. WW-13 at 2218.) On appeal, the Florida Supreme Court, applying *Strickland*, determined that Petitioner failed to advance any argument concerning prejudice and also determined that the postconviction court had

---

[29]On appeal, the Florida Supreme Court determined that the claim regarding counsel's failure to pursue laboratory testing was procedurally barred because it had not been raised and preserved for review on appeal. *Preston*, 970 So. 2d at 802, n. 19. This issue was not raised in Petitioner's third Rule 3.850 motion or his closing argument to the Rule 3.850 motion. (Ex. WW-7; Ex. WW-13.) In his appeal of the trial court's denial of the third Rule 3.850 motion, Petitioner notes that "[t]his was a complementary issue that was pursued pre-evidentiary hearing on the failure to develop corroborating evidence of PCP usage. The appellant did not request leave to amend his Rule 3.850 motions and presented no further evidence other than the referenced stipulations." (Ex. X at 47-48.) Under Florida law, a party may not raise an issue for the first time on appeal. *See Dade County Sch. Bd. v. Radio Station WQBA*, 731 So. 2d 638 (Fla. 1999). As such, the Florida Supreme Court did not err under Florida law by refusing to address this claim. Petitioner has not shown either cause or prejudice that would excuse the default. Likewise, Petitioner has neither alleged nor shown the applicability of the actually innocent exception. Petitioner has failed to satisfy either of the exceptions to the procedural default bar.

properly concluded that resentencing counsel made a strategic decision not to call Cobb as a witness after considering alternative courses of action. *Preston*, 970 So. 2d at 801-02. Petitioner has not shown, nor does the Court find upon its own review, that the Florida's Supreme Court's decision was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

At Petitioner's 1981 trial, Cobb testified that she saw Petitioner at about 2:20 a.m. on the day of the murder. She testified that he stood directly in front of her car with a bewildered look on his face for nearly thirty seconds. *Preston*, 970 So. 2d at 802. At Petitioner's resentencing, Dr. Cliff Levin testified that he considered Cobb's testimony in making his determination that Petitioner was on PCP when he murdered Walker. (Ex. Q-5 at 934.) Dr. Levin testified:

> [Arlene Cobb] observed him in the headlights of her car, wherein she observed him to be acting strangely, staring at her car, not moving for, I think it was twenty, thirty seconds, and staying in her headlights and producing what's common with one of the reactions of PCP, which is a blank stare, a dissociative state where you're not thinking about what's happening in front of you, you're off in another world, and that seemed to be consistent with this kind of drug stare.

(Ex. Q-5 at 934-935.)

Public defender James Russo ("Russo") testified at an evidentiary hearing on this issue that he felt that Cobb's testimony at trial had been stronger than her testimony at the first penalty phase and that he and co-counsel Marlene Alva ("Alva") felt that "[Cobb's]

testimony would come across as strong or stronger through bootstrapping" on to the testimony of a mental health professional. (Ex. W-2 at 262.) Russo also testified that if he had thought it essential for Cobb to be in the courtroom to testify, he would have "done everything possible to get her there." (Ex. W-2 at 261-262.) Alva testified at the evidentiary hearing that Cobb had indicated that she did not remember the events to which she had testified at trial and that she did not wish to testify at the resentencing. (Ex. W-2 at 308.) Alva noted:

> Since I knew that the testimony could be brought in through the experts, even though it was hearsay as a basis for their opinion, then that was the course that was chosen since she was not going to have any independent recollection now, and the experts could put the most positive spin on it and obviously she wouldn't be subject to cross-examination in that context by the State.

(Ex. W-2 at 309.)

The state courts properly rejected Petitioner's claim by deferring to counsels' strategic decisions. Trial counsel must decide which strategic and tactical option to pursue, such as deciding which witness to call or defense to present. *See, e.g., Dingle v. Sec'y, Dep't of Corr.*, 480 F.3d 1092, 1099 (11th Cir. 2007). Counsels' decision to forego calling a reluctant witness and to introduce instead the witness' testimony through Dr. Levin was reasonable. Russo felt that Cobb's testimony had been stronger at trial than at a prior sentencing hearing and Alva felt that Cobb's testimony would be more positive for Petitioner if presented through the mental health experts. Clearly, counsels' decision to forego Cobb's live testimony was a matter of trial strategy. Consequently, the state court's application of

*Strickland* was reasonable.

Furthermore, Petitioner's unsupported contention that Cobb could have corroborated his PCP use on the night of the murder fails to meet *Strickland*'s prejudice prong because "mere speculation that missing witnesses would have been helpful is insufficient to meet the petitioner's burden of proof." *Streeter v. United States*, 335 F. App'x 859, 864 (11th Cir. 2009) (citing *Johnson v. Alabama*, 256 F.3d 1156, 1187 (11th Cir. 2001)). Moreover, in light of the fact that the substance of Cobb's testimony was presented to the resentencing jury and, because Cobb could only have conveyed what she saw and could not have expressed an opinion as to whether Petitioner was on PCP at the time she saw him, Petitioner cannot show that he suffered prejudice from counsels' decision not to call Cobb to testify. The state courts' conclusion that Petitioner cannot show prejudice from counsels' decision not to call Cobb to testify was a reasonable application of *Strickland*. Accordingly, this claim fails on both *Strickland* prongs and does not warrant habeas relief.

### T.     Claim Twenty

Petitioner argues that Florida's rule prohibiting Petitioner's counsel from interviewing jurors violates his equal protection and due process rights. This claim was raised in Petitioner's third Rule 3.850 motion (claim eight) and was denied because it was procedurally barred and because Petitioner failed to present any evidence of juror misconduct. The Florida Supreme Court found that the claim was procedurally barred and without merit. *Preston*, 970 So. 2d at 796 n.12.

This claim is procedurally barred because the Florida Supreme Court so determined in its opinion affirming the denial of Petitioner's third Rule 3.850 motion. The denial on procedural bar grounds was a correct application of Florida law. In the present case, Petitioner has not shown either cause or prejudice that would excuse the default. Likewise, Petitioner has neither alleged nor shown the applicability of the actually innocent exception. Petitioner is unable to satisfy either of the exceptions to the procedural default bar. Therefore, this claim is procedurally barred and is denied.

Moreover,

> [R]ules which prevent attorney interviews or other contact with jurors, or preclude juror testimony where the subject inheres in the verdict itself have repeatedly been applied in criminal cases and held constitutional. *See, e.g., Tanner v. United States*, 483 U.S. 107, 107 S. Ct. 2739, 97 L. Ed. 2d 90 (1987) (applying Federal Rule of Evidence 606(b) to exclude testimony of juror misconduct, including drug and alcohol use); *Sims*, 155 F.3d at 1312-13 (applying Florida rule that juror testimony is not relevant unless it concerns matters that do not essentially inhere in the verdict itself).

*Cole v. Crosby*, No. 505CV222OC10GRJ, 2006 WL 1169536, at *61 (M.D. Fla. May 3, 2006).

Petitioner has presented no evidence or made any legal argument demonstrating that the rejection of this claim by the state courts was contrary to or an unreasonable application of federal law. Consequently, this claim is denied.

## U.     Claim Twenty-One

Petitioner contends that the state courts erred in denying his claim that the state attorney's failure to produce misplaced files and records deprived Petitioner of effective assistance of counsel. This claim was raised in Petitioner's third Rule 3.850 motion (claim

one) and was denied because Petitioner failed to show that the files contained anything exculpatory and because the state attorney's office made a reasonable and diligent search for those files. The Florida Supreme Court found that the claim was without merit because Petitioner failed "to assert any error or request relief." *Preston*, 970 So. 2d at 796.

This claim was raised in Petitioner's third Rule 3.850 motion based on the State's alleged failure to provide certain public records to Petitioner's postconviction relief counsel. As alleged in the amended Rule 3.580 motion, "[w]ithout the foregoing records, it is impossible for Mr. Preston's counsel to properly represent him either in the form of preparing this [Rule 3.850] motion, or otherwise." *See* Ex. WW-1 at 104. Petitioner also argued that "[c]apital postconviction defendants are entitled to Chapter 119 records disclosure." *Id*. at 105.

It is clear that this claim is not properly reviewable in a federal habeas proceeding. "A habeas petition must allege the petitioner's detention violates the constitution, a federal statute, or a treaty. . . . [A] petition alleging errors in the state post-conviction review process is not addressable through habeas corpus proceedings." *Franzen v. Brinkman*, 877 F.2d 26 (9th Cir. 1989). In *Spradley v. Dugger*, 825 F.2d 1566 (11th Cir. 1987), the petitioner argued that the state trial court violated his due process rights when it denied his Rule 3.850 motion because it did not conduct an evidentiary hearing and because its opinion denying relief failed to attach those portions of the record on which it relied. The Eleventh Circuit Court of Appeals held that the state trial court's alleged errors in the Rule 3.850 proceedings did not undermine the validity of the petitioner's conviction; therefore, the

claim went to issues unrelated to the cause of the petitioner's detention, and it did not state a basis for habeas relief. *Id*. at 1567. In this claim, Petitioner alleges errors in the state postconviction review process which are not addressable through habeas corpus proceedings; consequently, it must be denied.

Additionally, pursuant to 28 U.S.C. section 2254, a state prisoner is entitled to federal habeas corpus relief if he is held in custody in violation of the Constitution, laws, or treaties of the United States. Here, Petitioner has not alleged a federal constitutional violation with regard to this claim in the state courts or in the instant habeas petition. A mere error of state law does not constitute a denial of due process. *Estelle v. McGuire*, 502 U.S. 62, 67-69 (1991). Moreover, this Court expresses no opinion on the state trial court's interpretation of Florida law. "A state's interpretation of its own laws or rules provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved." *See McCullough v. Singletary*, 967 F.2d 530, 535 (11th Cir. 1992). When no question of a federal constitutional nature is involved, the state court's interpretation of Florida law provides no basis for federal habeas corpus relief. Since this claim is based exclusively on state law issues, it must be denied. *See Willeford v. Estelle*, 538 F.2d 1194, 1198 (5th Cir. 1976).

Further, it is clear that there was no intentional action on the part of the State and that there was no evidence that the missing files contained exculpatory evidence. In fact, Petitioner acknowledged this in his initial brief on appeal from the denial of the third Rule 3.850 motion:

The record is also [clear] that there is no evidence of intentional action or

non-action causing the material to be misplaced or in the failure of the State to locate the missing material.

The record is also clear that neither party is certain as to the exact nature or identity of the materials that are missing . . . . Since neither party knows exactly what is misplaced and missing, neither party can show whether exculpatory materials are involved.

(Ex. X, Initial Brief at 53.)  Thus, there does not appear to be any question that files were lost, that the State did not intentionally lose the files, and that the State made a good faith effort to locate them.

Under the circumstances, Petitioner has not met his burden of demonstrating that the state courts' denial of this claim was contrary to, or an unreasonable application of, clearly established federal law, as determined by the Supreme Court within the meaning of 28 U.S.C. § 2254(d).

## V.     Claim Twenty-Two

Petitioner states that execution by lethal injection is cruel and unusual punishment. Petitioner raised this issue in his third Rule 3.850 motion (claim thirty-seven), and the trial court denied the claim as procedurally barred.  The trial court also determined that other courts had rejected this claim.  The Florida Supreme Court found that the claim was not procedurally barred because electrocution was the only means of execution prior to 2000, and, therefore, Petitioner could not have challenged lethal injection on direct appeal. However, the Florida Supreme Court affirmed the denial based on its decision in *Sims v. State*, 754 So. 2d 657 (Fla. 2000).

In *Sims*, the Florida Supreme Court concluded that "the procedures for

administering the lethal injection as attested do not violate the Eighth Amendment's prohibition against cruel and unusual punishment." *Id.* at 668. Petitioner's claim lacks merit because "Florida's lethal-injection protocol is 'substantially similar' to that of Kentucky[, which] brings Florida's lethal-injection protocol squarely within the safe harbor created by the *Baze* plurality." *Ventura v. Florida*, 2 So. 3d 194, 200 (Fla. 2009). In *Baze v. Rees*, 553 U.S. 35 (2008), the United States Supreme Court held that Kentucky's method of execution was consistent with the Eighth Amendment. Thus, Petitioner's prospective execution is neither cruel nor unusual. "Some risk of pain is inherent in any method of execution--no matter how humane--if only from the prospect of error in following the required procedure. It is clear, then, that the Constitution does not demand the avoidance of all risk of pain in carrying out executions." *Id.* at 47. Petitioner fails to show that the rejection of this claim by the state courts was an unreasonable application of clearly established federal law or was based on an unreasonable determination of the facts in light of the evidence. Therefore, this claim is denied.

**W.      Claim Twenty-Three**

Petitioner argues that the state courts erred in denying his claim that, under *Apprendi* and *Ring*,[30] the Florida death sentencing statutes are unconstitutional. This claim was

_____

[30]*Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000) ("[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."); *Ring v. Arizona*, 536 U. S. 584 (2002) (holding unconstitutional the Arizona capital sentencing statute to the extent that it allowed a sentencing judge, sitting without a jury, to find an

raised in Petitioner's third Rule 3.850 motion (claim forty-two) and was found to be without merit. The Florida Supreme Court denied the claim as being procedurally barred.

Both the United States Supreme Court and the Eleventh Circuit Court of Appeals have held that *Apprendi* and *Ring* do not apply retroactively in habeas actions. *See Schriro v. Summerlin*, 542 U.S. 348, 358 (2004); *McCoy v. United States*, 266 F.3d 1245, 1258 (11th Cir. 2001). In addition, the United States Supreme Court has repeatedly reviewed and upheld Florida's capital sentencing scheme, and *Apprendi* does not overrule that precedent. *See Apprendi*, 530 U.S. at 496–97. Accordingly, this claim is denied.

## X.     Claim Twenty-Four

Petitioner states that he received ineffective assistance of trial counsel at the guilt phase of his trial because counsel failed to challenge the competency of the medical examiner. This claim is based on trial counsel's alleged failure to voir dire the State's pathologist, Dr. Garay, which prevented counsel from finding out that there were flaws in the autopsy procedure. This claim was raised in Petitioner's third Rule 3.850 motion (claim forty-one) and was denied as procedurally barred because it should have been raised in a prior Rule 3.850 motion. The Florida Supreme Court likewise found that the claim was procedurally barred because it should have been raised in his first postconviction motion following his 1981 trial. *Preston*, 970 So. 2d at 796 n.10.

This claim is procedurally barred because the Florida Supreme Court so determined in its opinion affirming the denial of Petitioner's third Rule 3.850 motion. The denial on

aggravating circumstance necessary for imposition of the death penalty).

procedural bar grounds was a correct application of Florida law.  *See Pope v. State*, 702 So. 2d 221, 223 (Fla. 1997) ("A defendant may not raise claims of ineffective assistance of counsel on a piecemeal basis by filing successive motions.  Where a previous motion for postconviction relief raised a claim of ineffective assistance of counsel, a trial court may summarily deny a successive motion which raises an additional ground for ineffective assistance of counsel.") (citations omitted).  Hence, Petitioner has not shown either cause or prejudice that would excuse the default.  Likewise, Petitioner has neither alleged nor shown the applicability of the actually innocent exception.  Since Petitioner is unable to satisfy either of the exceptions to the procedural default bar, this claim is procedurally barred and is therefore denied.

**Y.**    **Claim Twenty-Five**

Petitioner asserts that his trial court proceedings "were fraught with procedural and substantive errors" and that the "combination of errors deprived him of the fundamentally fair trial guaranteed under the . . . United States Constitution."  This claim was raised in Petitioner's third Rule 3.850 motion (claim thirty-six) and was denied because it was insufficiently pled.  The Florida Supreme Court affirmed the denial of the claim because it had "already denied each allegation of error on direct appeal following [Petitioner's] resentencing in 1991, and the trial court properly denied each of [Petitioner's] postconviction claims below."  *Preston*, 970 So. 2d at 804.

As previously discussed, none of the alleged errors of the trial court or of trial/appellate counsel that this court substantively reviewed was found to be meritorious.

Taken together, their cumulative effect also falls far short of depriving Petitioner of effective assistance of counsel or rendering his trial fundamentally unfair. Furthermore, the remaining claims were procedurally barred. Therefore, Petitioner is not entitled to federal habeas relief on this "cumulative effect" claim.

## Z.    Claim Twenty-Six

Petitioner argues that section 921.141(5), Florida Statutes "is facially vague and over broad in violation of the eighth and fourteenth amendments."[31]  According to Petitioner, "Florida's jury instruction on the aggravator of commission of a murder during the course of a kidnaping is unconstitutional on its face and as applied," and, in addition, appellate counsel was ineffective for failing "to litigate" the issue.  Petitioner also states that the jury instructions provided at the resentencing regarding aggravating circumstances "shifted the burden of proof to Mr. Preston on the central sentencing issue of whether death was the appropriate sentence."

The underlying claims--that section 924.141(5) was unconstitutional and that the jury instructions shifted the burden of proof--were raised in Petitioner's third Rule 3.850 motion (claims three, fourteen nineteen, and twenty) and were found to be procedurally barred. The underlying claims were not raised on the appeal with the Florida Supreme Court, which noted that Petitioner did not appeal the denial of these claims.  *See Preston*, 970 So. 2d at 805 n.22.  However, the underlying claims were raised in conjunction with an

_____

[31]Section 921.141(5) sets forth the aggravating circumstances that can be found in support of a sentence of death.

ineffective assistance of appellate counsel claim in Petitioner's second petition for writ of habeas corpus. The Florida Supreme Court found the underlying claims and the ineffective assistance of appellate counsel claim were procedurally barred and that Petitioner could not overcome the procedural default by recasting the underlying claims in the guise of an ineffective assistance of counsel claim. Thus, this claim is procedurally barred in this Court because the Florida Supreme Court so determined in its opinion denying Petitioner's petition for writ of habeas corpus. The denial on procedural bar grounds was a correct application of Florida law. *See Rodriguez v. State,* 919 So. 2d 1252, 1281 n.16 (Fla. 2005) ("Many of the issues raised in claim 1 are repetitive of the issues raised in Rodriguez's 3.850 postconviction appeal, including the claims of erroneous jury instructions and the unconstitutionality of Florida's death penalty statute. Although Rodriguez has couched these claims in terms of ineffective assistance of appellate counsel, he cannot overcome a procedural default by recasting the argument in the guise of an ineffective assistance claim."). Petitioner has not shown either cause or prejudice that would excuse the default. Likewise, Petitioner has neither alleged nor shown the applicability of the actually innocent exception. Hence, this claim is denied.

Moreover, it does not appear that this issue was preserved for appellate purposes because no objection was interposed with the trial court. Under Florida law, the failure of trial counsel to object at trial bars appellate review. *Jackson v. Dugger*, 931 F.2d 712, 715 n.7 (11th Cir. 1991). The sole exception to this rule is when the error constitutes "fundamental error." *Id.* at 715 n.7. However, Petitioner has not established that the arguments

complained of in this claim constituted "fundamental error." Consequently, since these issues were not preserved for review on appeal, appellate counsel was procedurally barred from raising them on direct appeal and therefore was not deficient in failing to do so. *Id.* at 715.

Also, in *Caldwell v. Mississippi*, 472 U.S. 320 (1985), which is relied on by Petitioner, the United States Supreme Court held that the jury must be fully advised of the importance of its role, and neither comments nor instructions may minimize the jury's sense of responsibility for determining the appropriateness of death. *See id.* at 341. However, the Florida Supreme Court has repeatedly rejected challenges to Florida's standard jury instructions based on *Caldwell*. *See Mansfield v. State*, 911 So. 2d 1160, 1180 (Fla. 2005); *Sochor v. State*, 619 So. 2d 285, 291 (Fla. 1993); *Turner v. Dugger*, 614 So. 2d 1075, 1079 (Fla. 1992).

Finally, as discussed above, Petitioner's appellate counsel raised several claims on direct appeal and submitted an initial brief which was comprehensive, thorough, and well-argued.

Petitioner has not shown that the state court's denial of this claim was contrary to, or involved an unreasonable application of, clearly established federal law or was based on an unreasonable determination of the facts in light of the evidence.

## AA.   Claim Twenty-Seven

Petitioner contends that he will subjected to cruel and unusual punishment because he "may be incompetent at [the] time of [his] execution." This claim was raised in

Petitioner's second petition for writ of habeas corpus (claim three) filed with the Florida Supreme Court and was denied without prejudice because it was premature. *Preston*, 970 So. 2d at 805.

Florida law requires that a death warrant be issued before a claim of incompetence to be executed can be asserted. *See* Fla. R. Crim. P. 3.811. Petitioner has raised this claim to preserve it for future review. However, Petitioner incorrectly asserts that "a competency claim [must] be raised in the initial federal petition for habeas corpus. *See Tompkins v. Secretary, Department of Corrections.*, 557 F.3d 1257, 1259 (11th Cir. 2009) ("[A] petitioner's *Ford v. Wainwright*, 477 U.S. 399, 106 S. Ct. 2595, 91 L. Ed. 2d 335 (1986), claim of incompetency to be executed because of his mental condition at the time of the scheduled execution is not one that is required to be brought in an initial habeas petition on pain of being treated as a second or successive petition. *Panetti*, 127 S. Ct. at 2855."). Because there is no indication that the Governor has signed a death warrant, this claim is not ripe for review. Accordingly, habeas relief in not warranted.

**BB.  Claim Twenty-Eight**

Petitioner argues that appellate counsel was ineffective for failing to argue that Florida's rule prohibiting counsel from interviewing jurors violates equal protection and due process rights and various amendments to the United States Constitution. This claim was raised in Petitioner's second petition for writ of habeas corpus filed with the Florida Supreme Court (claim two) and was found to be procedurally barred. *Preston*, 970 So. 2d

at 805.

The Florida Supreme Court found that the underlying claim--that Florida's rule prohibiting defense counsel from interviewing jurors violated his federal constitutional rights--and the ineffective assistance of appellate counsel claim were procedurally barred and that Petitioner could not overcome the procedural default by recasting the underlying claim in the guise of an ineffective assistance of counsel claim. Thus, this claim is procedurally barred in this Court because the Florida Supreme Court so determined in its opinion denying Petitioner's petition for a writ of habeas corpus. The denial on procedural bar grounds was a correct application of Florida law. *See Rodriguez*, 919 So. 2d at 1281 n.16. Petitioner has not shown either cause or prejudice that would excuse the default. Likewise, Petitioner has neither alleged nor shown the applicability of the actually innocent exception. The entire record has been reviewed, and the Court concludes that Petitioner is unable to satisfy either of the exceptions to the procedural default bar. Hence, this claim is denied.

Moreover, it does not appear that this issue was preserved for appellate purposes because Petitioner did not file a motion with the trial court seeking leave to interview the jurors. Under Florida law, the failure of trial counsel to object at trial bars appellate review. *Jackson*, 931 F.2d at 715 n.7. The sole exception to this rule is when the error constitutes "fundamental error." *Id.* However, Petitioner has not established that the arguments complained of in this claim presented "fundamental error." Consequently, since this issue was not preserved for review on appeal, appellate counsel was procedurally barred from

raising it on direct appeal and therefore was not deficient in failing to do so. *Id*. at 715.

Finally, as discussed above, Petitioner's appellate counsel raised several claims on direct appeal and submitted an initial brief which was comprehensive, thorough, and well-argued. As such, Petitioner has not shown that the state court's denial of this claim was contrary to, or involved an unreasonable application of, clearly established federal law or was based on an unreasonable determination of the facts in light of the evidence.

## V. CONCLUSION

The Court finds that the claims raised in the instant petition are without merit and must be denied with prejudice.

Accordingly, it is hereby **ORDERED AND ADJUDGED** as follows:

1. The Petition for Habeas Relief (Doc. No. 1) filed by Robert Anthony Preston, Jr. is **DENIED**.

2. The Clerk of the Court shall enter judgment accordingly and is directed to close this case.

3. This Court should grant an application for certificate of appealability only if the Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Petitioner has failed to make a substantial showing of the denial of a constitutional right. Accordingly, a Certificate of Appealability is **DENIED** in this case.

**DONE AND ORDERED** in Orlando, Florida, this 1st day of May, 2012.

_____
GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies to:
OrlP-2 5/1
Counsel of Record